**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 25-90818 |
| 57 Concrete LLC,[1] | Chapter 11 |
| Debtor. | |

**SUPPLEMENTAL DECLARATION OF ELIUD R. CAVAZOS IN SUPPORT OF**
**VOLUNTARY PETITION AND FIRST DAY MOTIONS**

I, Eliud R. Cavazos, hereby declare, pursuant to 28 U. S. C. §1746, under penalty of perjury as follows:

1.      I am the Chief Executive Officer and a managing member of 57 Concrete LLC (the "Debtor" or the "Company").   I am authorized to make this Supplemental Declaration on behalf of the Debtor.  I previously submitted the Declaration of Eliud R. Cavazos in Support of Voluntary Petition and First Day Motions [ECF 3] (the "Original Declaration").   This supplemental declaration (the "Supplemental Declaration") is intended to supplement, and shall be read together with, the Original Declaration.

2.      I submit this Supplemental Declaration in support of the **Debtor's Emergency Motion for Interim and Final Orders Authorizing the Debtor to Pay Prepetition Claims of Critical Vendor Texan Cement, Inc. and to Continue Trade Terms Post-Petition** (the "Texan Cement Critical Vendor Motion").

3.      Except as otherwise indicated, all facts set forth in this Supplemental Declaration are based on my personal knowledge, my review of relevant documents, discussions with

---

[1]      The last four digits of its Employer Identification Numbers is 0886.  The Debtor's mailing address is: 4877 Western Rd., Mission, TX 78574.

employees of the Debtor, and my experience, knowledge, and information concerning the Debtor's business, operations, and financial affairs. If called upon to testify, I would testify competently and truthfully to the facts set forth herein.

**Correction to Original Declaration**

4. I wish to correct a factual statement contained in paragraph 3 of the Original Declaration. Paragraph 3 states that the Debtor commenced operations in or around October 2019. That statement is incorrect.

5. The Debtor was formed in July 2019, but did not commence active operations until approximately August 2020, following a period of business planning, equipment acquisition, and workforce development. All references to the commencement of the Debtor's operations should be understood accordingly.

**Additional Industry and Operational Context**

6. The Debtor supplies ready-mix concrete to both commercial and residential construction customers throughout the Rio Grande Valley. While both segments are important, they differ materially in their labor structures, cost sensitivity, and ability to absorb changes in labor availability and cost.

7. The Debtor's commercial customers generally do not present labor-related disruptions of the type experienced in the residential market. Commercial construction projects are typically structured to comply with applicable labor and employment laws, including prevailing wage requirements, and are staffed by contractors and subcontractors utilizing authorized and properly documented workers. These projects are budgeted to absorb higher labor costs and compliance-related expenses, and delays or cost increases can often be addressed contractually.

8. By contrast, residential homebuilder customers operate in a significantly more cost-sensitive environment. Margins in residential construction are materially lower, and labor costs

represent a disproportionate share of total project expense. As a result, residential builders are substantially more constrained in their ability to absorb increased labor costs while remaining economically viable.

9.     These structural differences contributed directly to the Debtor's operational and liquidity challenges in 2025. As labor availability in the residential market deteriorated, residential builders were forced to delay or suspend projects, which in turn caused an abrupt decline in demand for residential concrete deliveries. Commercial demand, while more stable, could not fully offset the sudden loss of residential volume.

**Debtor's Emergency Motion For Entry of An Order Extending the Time Within Which the Debtor Must File Its (I) Schedules of Assets and Liabilities, and (II) Statement of Financial Affairs**

10.     Since the Petition Date, the Debtor and its professionals have been required to focus intensively on first-day and emergency matters necessary to stabilize operations, including payroll continuity, utilities, cash management, factoring arrangements, and critical vendor relationships.

11.     The preparation of the Debtor's Schedules and Statement of Financial Affairs is particularly complex given the Debtor's asset-intensive operations, large fleet, numerous secured financings, trade relationships, merchant cash advance arrangements, and affiliated entities.

12.     The Debtor is also working closely with its financial advisor, Mario Alegre, who is assisting with the compilation and reconciliation of financial data. While highly experienced, Mr. Alegre has not previously worked on a bankruptcy case, which has required additional coordination and review to ensure accuracy and compliance with bankruptcy disclosure requirements.

13.     The original fourteen-day deadline to file Schedules and the Statement of Financial Affairs falls during the holiday period, which further complicates the ability to gather information, reconcile accounts, and coordinate with employees, lenders, vendors, and advisors.

3

14.     Granting the requested extension will allow the Debtor to file accurate, complete, and reliable Schedules and Statement of Financial Affairs, avoid the need for multiple amendments, and promote judicial economy. The extension is requested in good faith and will not prejudice creditors or other parties in interest.

15.     For these reasons, I respectfully submit that cause exists to grant the Extension Motion

Dated: December 22, 2025                                    *Eliud R. Cavazos*

_____
Eliud R. Cavazos