**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 25-90818 (CML) |
| **57 CONCRETE LLC,** | § | |
| ***et al.,*** | § | Chapter 11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**COMMITTEE'S REPLY IN SUPPORT OF ITS MOTION TO CONTINUE**
**THE JUNE 9, 2026 HEARING ON THE DEBTORS' MOTION TO ASSUME**
**AND IN RESPONSE TO THE DEBTORS' REPLY [DKT. NO. 343]**
**[Relates to Dkt. Nos. 289, 335, 337, 340, 343]**

The Official Committee of Unsecured Creditors (the "Committee") files this reply in support of its motion to continue the June 9, 2026 hearing on the Debtors' motion to assume the Equipment Supply and Production-Based Use Agreement and to approve short-term leases to Filegonia Aggregates LLC [Dkt. No. 289] (the "May 14 Motion"), and in response to the Debtors' reply [Dkt. No. 343] (the "Reply"), and respectfully states as follows:

**I.     THE QUESTION IS THE DEBTORS' BURDEN, NOT THE COMMITTEE'S DILIGENCE**

1.     The May 14 Motion seeks approval of transactions between the Debtors and entities owned and controlled by the Debtors' insiders.  The Debtors do not dispute, and in the May 14 Motion, affirmatively concede, that such transactions are subject to entire-fairness scrutiny, and that the burden of proving both fair process and fair price rests with the Debtors.  [Dkt. No. 289 ¶ 50; *see Pepper v. Litton*, 308 U.S. 295, 306 (1939).]   The Committee's motion to continue does not ask the Court to relieve the Committee of any burden; it asks the Court to afford a reasonable

opportunity to test the burden the Debtors must carry, through the discovery that an insider transaction ordinarily requires.  The Reply never engages this point.

## II.    THE RECORD DOES NOT SUPPORT THE "DID NOTHING" NARRATIVE

2.    The Reply asserts that the Committee has "done nothing." [Dkt. No. 343 ¶¶ 5–10.] The record proves otherwise.  The Committee timely filed a substantive objection to the May 14 Motion [Dkt. No. 335]; participated in a face-to-face meeting with the Debtors on April 1, 2026; and, since the first weeks of its appointment, has consistently identified the insider character of the transactions—which is not a slogan but the governing legal standard the Debtors themselves invoke.

3.    Further, as soon as possible, the Committee will serve the Debtors with written discovery directed to the transactions among 57 Concrete LLC, 57 Concrete X, LLC, and RGV and to the proposed Filegonia leases that are the subject of the May 14 Motion.  Furthermore, the Reply's assertion that the Committee "has not requested production of one document" is incorrect. The Committee has been asking, via informal discovery, for documents relating to insider transactions for months.  It began doing so within weeks of the Committee's appointment.  The Committee sought informal discovery in an attempt to keep administrative costs down.

4.    Counsel for the Committee has sent letters regarding disgorgement of $60,000 in payments directed from the Debtor the day before the Petition Date to fund a retainer for Eliud Cavazos, Pedro Cepeda, and Jesus Cepeda's counsel, Shelby Jordan, despite the clear conflicts between the Debtors and among the three men individually, including the fact that Mr. Jordan filed claims against 57 Concrete on behalf of three individuals in at least one state court lawsuit. Counsel for the Committee has asked repeatedly via email and phone for the Debtors' position on plan treatment for the general unsecured creditors so that it can calibrate appropriately its approach

to the case.  No response.  The Committee has asked for documents and communications related to the motion to assume two leases with non-debtor insiders.  [Dkt. No. 166] The Debtors have not provided complete discovery, and they have provided precious little as to communications surrounding each transaction.  The Committee raised the fact that the lessor in one lease in Dkt. No. 166 doesn't own the property in issue (therefore it cannot be the lessor), and with regards to the other lease, the land description with the taxing authorities is a tenth of the size identified in the motion.  The Committee has received no explanation for either issue.

5.      The Committee has asked for further information on the alleged ordinary course professionals [Dkt. No. 168] because, among other issues, it has questions about the relationships of those professionals and the services or benefits they provide to non-debtor insiders.  The Committee queries why, Mario Alegre, the Debtor's financial advisor, was never disclosed as an insider in his employment application based on the fact that he formed the approximately 20 insider entities in April and May 2025—and he was a manager for a number of them as of the Petition Date.  He also performs services for non-debtor insiders.  And yet, there has been no supplemental disclosure.  There has been a change in management from Mario Alegre to Pedro Cepeda as to at least one entity implicated in the May 14 Motion based on the post-petition filing with the Texas Secretary of State.

6.      After a month of failing to provide complete discovery despite continual requests, the Debtors proposed a meeting along with their financial advisor, Mario Alegre, on April 1st.  Leading up to that meeting, the Committee asked for the business ledger and Quickbooks accounts along with all metadata and audit trails so that counsel could be better equipped to ask questions at the April meeting.  That did not happen in time for counsel to the Committee to prepare in advance.  Instead, on the day of the meeting and at the meeting, the Debtors provided printout

reports of certain data—which is not the same as the business ledger—despite their calling it the business ledger.  Well after the meeting, the Debtors finally produced the Quickbooks, but not the general business ledger in native form or invoices or communications.  There have been no productions of the business ledger with metadata and audit trails—just pdf reports. For months, the Committee has been asking for invoices, communications, and other discovery tied to insider transactions.  The Debtors have either not responded at all or retorted that all the Committee needs is Quickbooks—as if that somehow inoculates the Debtors from complying with discovery requests.  The Debtors have refused to provide information on 57 Concrete X or Filegonia Aggregates, LLC or Filegonia Materials, LLC despite the fact that a co-owner and manager of some of the Debtors, Pedro Cepeda, owns those three companies and that these entities have been paid millions of dollars.

7.     The Committee has sought to employ a financial advisor, Karen Nicolaou with Harney Partners, and the employment application will be filed in the next day or two.  However, the Committee does not yet have Ms. Nicolaou's analysis.

## III.     RECEIPT OF DOCUMENTS IS NOT A TESTED EVIDENTIARY RECORD.

8.     The Debtors emphasize that they produced the Agreement on March 18, 2026 and "identified" the documents underlying their financial summaries in a footnote to the May 14 Motion. [Dkt. No. 343 ¶¶ 11, 13.]  The fact that a party has received documents in a general production (without accompanying metadata or any communications about its negotiation) is not a substitute for the right to test an insider transaction through the deposition of the insiders who structured it and the presentation of valuation evidence.  The Debtors structured the transactions; the Debtors prepared the summaries; the Debtors bear the burden.  The Committee is entitled to

examine Eliud Cavazos, Jesus Cepeda, Pedro Cepeda, and the appraiser under oath before the Court is asked to make findings of fairness, and that examination cannot occur by June 9.

The Debtors' own submissions confirm why a tested record is necessary rather than optional. The Reply describes the Agreement as one "between Concrete and RGV" [Dkt. No. 343 ¶ 1], yet the same Reply describes cash moving "from 57 Concrete to 57 Concrete X then to RGV" [*id.* ¶ 13], and the Debtors' hearing exhibits show that a non-party non-debtor invoices, collects, and retains estate funds in connection with the very Agreement the Debtors seek to assume. These are precisely the questions that discovery exists to answer.

## IV. THE DEBTORS CONCEDE THEY OFFER NO VALUATION EVIDENCE ON THE MAY 14 MOTION

9. The Reply explains that the Debtors' appraiser is needed for two relief-from-stay motions set for the morning of June 9, not for the afternoon hearing on the May 14 Motion. [Dkt. No. 343 ¶ 14.] By the Debtors' own account, then, they intend to ask the Court to approve insider transactions—including a per-cubic-yard rate the Debtors have never benchmarked—without offering any independent valuation or market evidence at all. The absence of fair-price evidence is not a reason to proceed; it is a reason the record is not ready.

## V. A STATUS CONFERENCE IS ALREADY SET FOR JUNE 9

10. The Reply confirms that a status conference "on the case in general" is already set for June 9, 2026. [Dkt. No. 343 ¶ 3.] The Committee does not seek to remove any matter from the Court's docket; it asks only that the contested, evidentiary portion of the May 14 Motion be deferred so that it may be heard on a complete record, and that the Court use the status conference already on its calendar to enter a scheduling order. That is the orderly and efficient course.

## VI. THE COMMITTEE PROPOSES A CONCRETE, EXPEDITED SCHEDULE

11.     To remove any suggestion of delay for delay's sake, the Committee proposes the following expedited schedule, which it is prepared to begin immediately: (a) written discovery served by June 15, 2026, with responses and document productions due by July 15, 2026; (b) depositions of the Debtors' designated witnesses, Eliud Cavazos, Pedro Cepeda, and the Truman Mox appraiser to be completed by August 24, 2026; (c) the parties to designate any valuation or other experts on a schedule the Court sets; (d) supplemental briefing, witness lists, and exhibit lists due seven days before the hearing; and (e) an evidentiary hearing on the sale motion at the Court's convenience on or after September 8, 2026.  The Committee will accommodate any reasonable adjustment the Court or the Debtors propose, and it is prepared to proceed on shorter intervals if the Court directs.

## VII.     CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court continue the evidentiary hearing on the May 14 Motion, enter a scheduling order at the June 9, 2026 status conference consistent with the schedule proposed above, and grant such other and further relief as is just and proper.

Dated: June 8, 2026

Respectfully submitted,

**GRABLE MARTIN PLLC**

*/s/ Mary Elizabeth Heard*
**MARY ELIZABETH HEARD**
Texas State Bar No. 24096727
SD # 2943737
Email: meheard@grablemartin.com
Grable Martin PLLC
7700 Broadway St., Ste 104 PMB 308
San Antonio, Texas 78209

Telephone: (210) 572-4925

*Counsel to the Official Committee of*
*Unsecured Creditors*

### **<u>Certificate of Service</u>**

I certify that on June 8, 2026, a true and correct copy of the foregoing was served by the

Court's Electronic Case Filing System on all parties registered to receive such service.

<u>*/s/ Mary Elizabeth Heard*</u>
Mary Elizabeth Heard