**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 25-90818 (CML) |
| 57 CONCRETE LLC, *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MICHAEL FISHEL AND THE FISHEL LAW GROUP AS CONFLICTS COUNSEL PURSUANT TO 11 U.S.C. § 327(e)**

**[Relates to Dkt. No. 394]**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of 57 Concrete LLC ("57 Concrete") files this Objection to *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Michael Fishel and the Fishel Law Group as Conflicts Counsel Pursuant to 11 U.S.C. § 327(e)* [Dkt. No. 394] (the "Application"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  At the June 9, 2026, hearing, the Court identified a structural problem: where one Debtor estate transacts with another Debtor estate, and where the same insiders sit on both sides, the estates' approval of those transactions is circular. The Court observed that it might be more comfortable if each affected estate had independent counsel evaluating and negotiating from that estate's perspective. The Application is offered as the answer to that observation. For the

1

following reasons, the Application does not solve the conflicts problem, and for that reason, the Application should not be approved.

2.    The Application proposes that a single lawyer, at a single firm, jointly represent three separate estates, 57 RGV Machinery, LLC ("RGV"), 57 Fuels LLC ("Fuels"), and 57 Logistics LLC ("Logistics") (collectively, the "Additional Debtors"), in connection with intercompany matters in which those three estates are adverse to one another and to 57 Concrete.  It proposes to do so under section 327(e).  This provision, by its terms, is available only for an attorney who *has represented the debtor*.  Here, the proposed counsel has never represented any of the Debtors.  The Application rests on an alignment representation supplied by Pedro Cepeda, a manager and guarantor whose divided loyalties are the reason independent counsel is required.  And it proceeds under an engagement letter that disclaims any adversarial posture toward 57 Concrete and identifies as its "principal objective" the confirmation of the very consensual joint plan that independent counsel is supposed to evaluate at arm's length.

3.    Two features of the proposed structure deserve the Court's particular attention.  First, 57 Concrete—the estate in which the Committee's constituency holds its claims—receives no independent counsel at all.  The Additional Debtors get Mr. Fishel.  57 Concrete gets Parkins & Rubio LLP ("P&R"), which under the contemporaneously filed *Debtors' Supplemental Application to Employ Parkins & Rubio LLP as General Bankruptcy Counsel for the Additional Debtors* [Dkt. No. 395] (the "Supplemental Application") would simultaneously represent all four estates.  The Court's June 9th concern was bilateral: it applies with equal force to the estate on the other side of every intercompany transaction.  The Application addresses only one part of the conflicts problem, and it fails to solve it.

2

4.    Second, the two applications together create an undefined carve-out that no party is positioned to police.  The Supplemental Application states that P&R "will not perform services in any matter for which separate Conflicts Counsel is required or otherwise engaged." [Suppl. Decl. ¶ 5; *see* Suppl. App. ¶ 10.]  Neither filing identifies who determines whether a given matter falls inside that carve-out, when that determination is made, or how it is recorded.  In practice, the determination would be made in the first instance by P&R, who is counsel to all four estates and the party whose own conflicts prompted the Court's inquiry, or by Mr. Cepeda, who signed both applications on behalf of the Additional Debtors.  Neither is independent of the matters being allocated.

5.    The Application does not cure the circularity the Court identified.  It relocates it.  The Committee respectfully submits that the Application should be denied.

## STANDING

6.    The Committee is a party-in-interest with the right to be heard on this Application. Section 1109(b) of the Bankruptcy Code provides that a "party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). These chapter 11 cases are jointly administered under a single case number, and the Application is filed on the joint docket.

7.    Beyond the statutory grant, the Committee's constituency is directly and economically affected by the relief sought.  The "Conflict Matters" for which retention is requested are defined as matters in which the interests of the Additional Debtors *differ from those of 57 Concrete*. [Application ¶ 9.]  By construction, 57 Concrete stands on the other side of every item on that list. Cure claims paid to RGV are paid by 57 Concrete.  Intercompany claims allowed in favor of the Additional Debtors are claims allowed against 57 Concrete.  Any potential releases running in

3

favor of the Additional Debtors and insiders are releases of 57 Concrete estate causes of action. The adequacy and independence of the representation on the other side of those transactions is a matter in which the Committee's constituency holds a direct economic stake.

8.     The Committee notes, and does not overstate, one further circumstance. To the Committee's knowledge, no official committee of unsecured creditors has been appointed in the cases of RGV, Fuels, or Logistics.  The Committee does not purport to speak for the creditors of those estates and does not seek to do so here.  The point is narrower and bears on the weight the Court should give the Application: because no creditor fiduciary exists in the Additional Debtors' cases, the counsel proposed by the Application is the *only* party positioned to test intercompany transactions from those estates' perspective.  Where a retention is the sole check in a case, the adequacy of that retention warrants close scrutiny rather than deference to the applicant's description of it.

## BACKGROUND

9.     On December 19, 2025, 57 Concrete commenced its chapter 11 case. On March 26, 2026, each of the Additional Debtors filed a voluntary petition.  The cases are jointly administered under Case No. 25-90818 (CML). P&R serves as general bankruptcy counsel and, by the Supplemental Application, seeks approval of that role for all four estates effective as of March 26, 2026.

10.     The Debtors are managed by common insiders, Eliud R. Cavazos, Jesus Cepeda, and Pedro Cepeda, who are also guarantors and co-obligors on secured equipment indebtedness owed by one or more of the Debtor estates. Schedule 1 to the Fishel Declaration identifies approximately thirty equipment lenders and finance companies.  The Debtor estates are variously co-obligors, lessees, guarantors, and pledgors with respect to overlapping obligations owed to those parties.

4

11.     The Committee has for several months sought, through informal and cooperative means, to determine the complete universe of the Debtors' insiders, affiliated entities, and guaranteed and co-obligated liabilities.  The Committee has pursued that information informally in order to avoid the cost to these estates of contested discovery.  The responses received from P&R to date have not enabled the Committee to identify the complete universe of insiders, affiliates, or guarantor and co-obligor liabilities.  As of the date of this Objection, the Committee remains unable to state with confidence which entities and individuals are obligated on which secured obligations, or how many affiliated entities exist. Furthermore, creditors are continuing to come out of the woodwork.  Yesterday, July 22, 2026, PNC Bank filed a motion to allow late filing of proof of claim based on lack of notice. [Dkt. No. 428].  Adding to the complexity of the web of insider transactions, despite sworn statements in the Schedules [Dkt. No. 121, p. 95] that Pedro Cepeda no longer had a member interest as of April 4, 2025, it appears that at least on one occasion well after that date, Pedro Cepeda represented himself as member of the Debtor and entered a corporate guaranty on behalf of 57 Concrete.  [Dkt. No. 428-2]. Despite having failed to produce all responsive non-privileged documents pertaining to multiple informal requests going back to the weeks after the Committee was formed, on July 22, 2026, the Debtor stated that it will no longer cooperate with informal discovery—and directed the Committee to proceed with formal discovery going forward.

12.     That gap in knowledge about the whole universe of insiders, affiliates, guarantors and co-obligor liabilities is relevant here in a specific way.  The Application asks the Court to approve a joint representation of three estates on the express premise that their interests are aligned. Furthermore, the Application asks the Court to accept a conflicts search run against Schedule 1. Neither the Court nor the Committee is presently in a position to verify either proposition, because

the underlying facts (who the insiders are, and who owes what to whom) have not been disclosed in a complete way.  The Committee raises this not to relitigate its discovery efforts, but because the Application requests approval of a structure whose central factual premise is unverified and, on the present record, unverifiable.

13.    At the June 9, 2026, hearing, the Court raised, *sua sponte*, concerns regarding the adequacy of independent representation where one Debtor estate acts as counterparty to another. The Application states that it is filed in response to those comments.

14.    On July 2, 2026, the Debtors filed the Application, the Fishel Law Group engagement letter dated June 29, 2026 [Dkt. No. 394-1] (the "Engagement Letter"), and the Declaration of Michael Fishel [Dkt. No. 394-2] (the "Declaration").  The Application was verified by Pedro Cepeda, signing three separate times as "Owner" of RGV, Fuels, and Logistics.  The Engagement Letter was countersigned by Mr. Cepeda three separate times, once for each Company. The Debtors filed the Supplemental Application the same day. The Committee objects separately to the Supplemental Application and incorporates that objection by reference.

**OBJECTION**

**I.   The Application Fails the Threshold Requirement of Section 327(e) Because Proposed Counsel Has Never Represented These Debtors.**

15.    Section 327(e) authorizes a trustee or debtor in possession, with court approval, to "employ, for a specified special purpose, other than to represent the trustee in conducting the case, *an attorney that has represented the debtor*, if in the best interest of the estate, and if such attorney does not represent or hold an interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e) (emphasis added).

16.    Prior representation of the debtor is a statutory element, not a descriptive gloss. Section 327(e) exists to permit an estate to retain the debtor's existing counsel for a discrete matter

(typically ongoing litigation, tax, regulatory, or transactional work) in which that counsel's accumulated familiarity is valuable and duplication would be wasteful.  That rationale is why the provision relaxes the disinterestedness requirement of section 327(a) and narrows the conflicts inquiry to the specified matter.

17.   The Fishel Law Group has never represented RGV, Fuels, or Logistics. The Declaration says so.  Section C of the Declaration is captioned "Prior Representation," and recites no prior representation of any kind.  It states instead that "[t]he Firm is being retained solely in connection with the Conflict Matters described herein and in the Application." [Decl. ¶ 7.] The Engagement Letter is dated June 29, 2026, more than three months after the Additional Debtors' petition date and more than six months after 57 Concrete's petition date, and it describes a wholly prospective engagement.

18.   The Application therefore fails the first element of the three-part test it identifies at paragraph 13, and it fails it as a matter of statutory text before the Court reaches adversity or best interest. A lawyer engaged for the first time post-petition to advise an estate is a section 327(a) retention. That distinction is not formal. It carries the disinterestedness requirement of section 101(14), the full conflicts inquiry of section 327(a), and disclosure obligations the Application's chosen framing avoids.

## II.   A Single Lawyer Cannot Simultaneously Represent Three Estates That Are Adverse to One Another on the Very Matters for Which He Is Retained.

19.   The Engagement Letter provides that the Firm "will jointly represent 57 RGV Machinery, LLC, 57 Logistics LLC, and 57 Fuels LLC," and rests that joint representation on the Companies' advice "that their interests are currently aligned with respect to the scope of this engagement." [Engagement Letter at 3.] That representation cannot be reconciled with the Conflict Matters as the Application defines them.

20.    The Conflict Matters expressly include "cure claims and cure amounts arising from any assumed executory contracts," "the treatment of intercompany claims, obligations, and accounts in any chapter 11 plan or otherwise," "restructuring transactions among the affiliated Debtor entities, including any transfers of assets, equipment ownership, equipment leasing arrangements, and intercompany financing obligations," and "plan provisions affecting the [Additional Debtors], including settlements, releases, and distributions." [Application ¶ 9(c)–(f).] Each of those categories is zero-sum among RGV, Fuels, and Logistics, and each is zero-sum as between those estates and 57 Concrete.

21.    The point is concrete rather than theoretical. RGV is the counterparty to the Equipment Supply and Production-Based Use Agreement singled out at paragraph 9(a)—the estate positioned to *receive* cure.  Fuels and Logistics are estates whose distributable value is diminished by cure paid to RGV.  57 Concrete is the estate that pays it.  Equipment ownership determinations (which estate owns which unit, and which is merely lessee or bailee) allocate value directly among all four estates.  Intercompany accounts run in every direction, so each estate is simultaneously creditor and debtor of the others on the same set of books.

22.    The guarantor and co-obligor structure sharpens the conflict. Because the Debtor estates are variously co-obligors and guarantors on overlapping equipment indebtedness, each estate holds contribution and subrogation claims against the others under applicable non-bankruptcy law, subject to sections 502(e)(1)(B) and 509. The allowance, disallowance, subordination, or settlement of those claims transfers value directly among the purported joint clients.  No single lawyer can advocate RGV's contribution claim against Fuels while resisting that claim on behalf of Fuels.

23. The Committee is unable to quantify that exposure because the complete universe of guaranteed and co-obligated liabilities has not been disclosed.  But the direction of the conflict does not depend on its magnitude. The Application asks the Court to approve a joint representation without disclosing the intercompany and co-obligor liabilities that determine whether joint representation is possible at all.  The applicant bears that burden, and it has not been carried.

24. Joint representation is permissible only where a lawyer reasonably believes the representation of each client will not be materially affected by the representation of the others. *See* Tex. Disciplinary R. Prof'l Conduct 1.06(b)–(c). Where the matters for which counsel is retained are defined as the matters on which the clients' estates trade value with one another, that belief is unavailable. Put another way, it is a non-waivable conflict.  The Engagement Letter appears to acknowledge as much, contemplating that "[i]f a conflict develops among the Companies" the Firm "may be required to withdraw." [Engagement Letter at 3.]  The conflict has not developed. It is the engagement.

### III.   57 Concrete Receives No Independent Representation, and the Boundary Between General and Conflicts Counsel Is Undefined.

25. The Court's June 9th observation concerned transactions in which one Debtor estate acts as counterparty to another. A counterparty relationship has two sides. The Application only addresses one.

26. Under the structure proposed by the Application and the Supplemental Application together, the Additional Debtors would receive conflicts counsel for the Conflict Matters, and 57 Concrete would receive none. P&R would remain general bankruptcy counsel to 57 Concrete while simultaneously serving as general bankruptcy counsel to the three estates on the other side of every Conflict Matter. [Suppl. App. ¶¶ 9, 12.] No independent professional is proposed to evaluate, from 57 Concrete's perspective, whether a cure payment to RGV is appropriate in

amount, whether an intercompany claim asserted by Fuels or Logistics should be allowed, or whether a plan release running in favor of the Additional Debtors and their principals is supported by consideration to 57 Concrete's estate.

27.     The carve-out purporting to separate the two roles is undefined in every operative respect.  The Supplemental Rubio Declaration states that P&R "will not perform services in any matter for which separate Conflicts Counsel is required or otherwise engaged unless authorized by applicable law and order of the Court." [Suppl. Decl. ¶ 5.]  Neither filing states who decides whether a matter "requires" conflicts counsel, at what point, on what standard, or subject to what record. The Schedule 1 attached to the Supplemental Rubio Declaration lists "Conflicts counsel [to be inserted]" among the Debtors' professionals—a placeholder that illustrates how provisional the allocation remains.

28.     The practical consequence is that the boundary would be drawn by P&R, which represents every estate on both sides of it, or by Mr. Cepeda, who controls the Additional Debtors and signed both applications. A conflicts protocol administered exclusively by the conflicted parties provides no protection.

## IV.   The Alignment Representation on Which the Joint Representation Rests Was Supplied by the Conflicted Insider.

29.     The Engagement Letter's joint-representation provision rests entirely on the Companies' own advice that their interests are aligned.  The Companies gave that advice through Pedro Cepeda, who countersigned the Engagement Letter three times, once for each Company, on July 1, 2026, and verified the Application three times as "Owner" on July 2, 2026.  Mr. Cepeda also executed the Supplemental Application on behalf of each Additional Debtor the same day.

30.     Mr. Cepeda is a manager of the Debtors and a guarantor of Debtor indebtedness.  He owns numerous companies, including, but not limited to, 57 Concrete X, 57 X, and Filegonia: each

10

has received millions of dollars both pre- and post-petition.  The UCC continues to evaluate these payments and other insider payments.  He is among the insiders whose overlapping roles gave rise to the Court's June 9th concerns.  Counsel whose scope is defined by the conflicted insider, whose factual predicate for undertaking a joint representation is a representation *from* that insider, and whose engagement was procured and countersigned by that insider on all three sides, is independent in name only.

31.    The Engagement Letter compounds the problem by eliminating confidentiality among the three clients: "information provided to the Firm by one Company may be shared with the other Companies, and there will be no confidentiality as among the Companies with respect to information relevant to this engagement." [Engagement Letter at 3.]  Because Mr. Cepeda controls all three Companies, any analysis counsel develops adverse to one estate is immediately available to the insider controlling the estate on the other side.  Rather than creating three independent perspectives, the structure ensures that no estate can develop a confidential position against another.

## V.    The Engagement Is Disclaimed as Non-Adversarial and Committed in Advance to a Predetermined Outcome.

32.    Both the Engagement Letter and the Declaration state that "[t]he Firm's engagement is not an adversarial or litigation engagement against 57 Concrete LLC." [Engagement Letter at 2; Decl. ¶ 6.]  The Engagement Letter states that the retention proceeds "with the principal objective of facilitating a consensual joint Chapter 11 plan and related restructuring transactions among affiliated debtors." [Engagement Letter at 1.]

33.    Counsel retained to evaluate whether intercompany transactions are fair to an estate cannot be retained on the express condition that he will not litigate against the counterparty, and, therefore, cannot be assigned as his "principal objective" the consummation of the transaction he

11

is retained to evaluate.  The conclusion is supplied with the engagement.  Whatever review follows, its outcome has been fixed at the outset.

34.    The limitation is operative, not aspirational.  Conflict Matter (h) reaches "avoidance actions, preference claims, fraudulent transfer issues, and other estate causes of action," but only "to the extent necessary to evaluate the interests of the [Additional Debtors] and provide independent advice." [Application ¶ 9(h).]  Read with the non-adversarial disclaimer, that scope permits proposed counsel to *consider* estate causes of action against 57 Concrete and against insiders, but not to *pursue* them.  Where the estates' most significant assets may be causes of action against affiliates and insiders, counsel retained on terms foreclosing their prosecution does not protect those estates.

## VI.    The Rule 2014 Disclosures Are Facially Incomplete.

35.    Bankruptcy Rule 2014(a) requires that an employment application be accompanied by a verified statement setting forth "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." The obligation is affirmative and continuing, and it is not satisfied by reciting that a search occurred.

36.    The Declaration states that "[t]he Firm has reviewed, or caused to be reviewed, the parties in interest listed on Schedule 1." [Decl. ¶ 10.] It then discloses nothing. It identifies no connection to any listed party, describes no methodology, states no result, and does not say whether the review is complete. Paragraph 16 concedes the Firm "is conducting further inquiries." The Court is asked to approve a retention while the conflicts inquiry supporting it remains open.

37.    The disclosure is deficient in three further respects. First, the Declaration nowhere discloses the nature, extent, or duration of any professional relationship between the Fishel Law

12

Group or Mr. Fishel and P&R, notwithstanding that P&R will remain general bankruptcy counsel to all four estates and that proposed counsel has agreed to "cooperate with" P&R in connection with his own retention and fee applications. [Engagement Letter at 4.] Where proposed counsel's function is to serve as an independent check on transactions structured by P&R, any professional relationship between them is a "connection" within Rule 2014(a) requiring affirmative disclosure. The Committee does not assert that such a relationship exists; it observes that the Declaration does not address the subject, and that the Court should not approve the retention until it does.

38. Second, the Declaration does not disclose who identified the Fishel Law Group, who negotiated the engagement, or who determined the scope of the Conflict Matters. Given that the Engagement Letter was countersigned by Mr. Cepeda on all three sides, and that its scope tracks the framing of intercompany issues advanced by P&R, these facts bear directly on independence.

39. Third, Schedule 1 is incomplete. The Committee's review of the Debtors' books and records and of publicly filed records has identified affiliated entities associated with the Debtors' insiders that do not appear on Schedule 1, and the Committee has been unable to determine the complete universe of such entities notwithstanding sustained informal efforts. A conflicts search run against an incomplete list of parties in interest cannot support the representations made in paragraphs 8, 9, and 14 of the Declaration. The deficiency is not curable by the searching professional alone, because the list against which he searched was supplied by the parties whose connections are at issue.

## VII.   The Retention Is Not in the Best Interest of the Estates.

40. Even if the Application satisfied section 327(e)'s threshold requirements, which it does not, the proposed retention would not be in the best interest of the estates. The Application seeks approval of a $950 hourly rate for a single practitioner to advise three estates across the full

13

range of intercompany, plan, cure, avoidance, and restructuring matters described in paragraph 9, on terms that foreclose adversity to the principal counterparty and leave the boundary of his engagement to be drawn by conflicted parties. Where a retention cannot deliver the independent, estate-by-estate evaluation the Court described on June 9th, the expense is not merely unproductive. It purchases the appearance of independent review without its substance and may be invoked hereafter as validation of transactions that were never independently tested.

## RESERVATION OF RIGHTS

41.     The Committee reserves all rights, including the right to supplement this Objection, to conduct discovery in connection with the Application, to be heard at any hearing on the Application, and to prosecute its pending and contemplated motions and objections, including its objection to the Supplemental Application. Nothing in this Objection constitutes a waiver of, or an election among, any of the Committee's rights or remedies, or an appearance on behalf of any estate other than that of 57 Concrete.

## RELIEF REQUESTED

42.     The Committee respectfully requests that the Court deny the Application. Should the Court be inclined to authorize independent representation for the Additional Debtors rather than deny the Application outright, the Committee respectfully submits that any such retention should provide, at a minimum: (a) separate counsel for each of RGV, Fuels, and Logistics, retained under section 327(a) rather than section 327(e); (b) independent representation for 57 Concrete with respect to the same Conflict Matters, so that both sides of each intercompany transaction are independently evaluated; (c) a written protocol, approved by the Court, defining which matters fall within the conflicts engagement, specifying who makes that determination and on what record, and providing notice to the Committee and the United States Trustee of matters allocated to general

14

counsel; (d) engagement terms that do not disclaim adversity to any Debtor, insider, or affiliate and that do not identify confirmation of a particular plan as an objective of the engagement; (e) selection, engagement, and instruction of such counsel by a person or persons independent of the manager-guarantors, with the Committee afforded an opportunity to be heard on the identity of proposed counsel; (f) full and affirmative Rule 2014 disclosure, including all connections with P&R and with the Debtors' insiders and affiliated entities, made against a complete and verified list of parties in interest; and (g) an express scope including the evaluation and, if warranted, the prosecution of estate causes of action against affiliates and insiders.

43.    The Committee further submits that the Court should not approve either the Application or the Supplemental Application until the Debtors have disclosed the complete universe of their insiders, affiliated entities, and guaranteed and co-obligated liabilities. Every representation on which the Application depends — that the three estates are aligned, that no disqualifying connection exists, and that the searched list of parties in interest is complete — is untestable without that disclosure.

WHEREFORE, the Committee respectfully requests that the Court deny the Application and grant such other and further relief as is just and proper.

Dated: July 23, 2026

Respectfully submitted,

**GRABLE MARTIN PLLC**

By: /s/ Mary Elizabeth Heard
Mary Elizabeth Heard
7700 Broadway St., Suite 104-308
San Antonio, Texas 78209

Telephone: (210) 572-4925
meheard@grablemartin.com


—and—


/s/ Ricky Hutchens
*/s/ Ricky Hutchens*
**RICKY HUTCHENS**
Texas State Bar No. 24152795
GRABLE MARTIN PLLC
rhutchens@grablemartin.com
12510 Beauline Abbey St.
Tomball, TX 77377
(901) 338-2897


*Counsel for the Official Committee of
Unsecured Creditors*


## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, a true and correct copy of the foregoing document

was served on all parties receiving electronic notice in these cases via the Court's CM/ECF system.

/s/ Mary Elizabeth Heard
Mary Elizabeth Heard

16