IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| 57 CONCRETE LLC, *et al.*[1] | § | CASE NO. 25-90818 (CML) |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**AFFIDAVIT IN SUPPORT OF PACCAR FINANCIAL CORP.'S MOTION FOR RELIEF FROM AUTOMATIC STAY REGARDING VEHICLES, OR ALTERNATIVELY, MOTION FOR ADEQUATE PROTECTION AND INSPECTION OF COLLATERAL**

| | |
|---|---|
| STATE OF WASHINGTON | § |
| | § |
| COUNTY OF KING | § |

BEFORE ME, the undersigned official, on this day personally appeared Linda Markle, known to me to be a credible person and who, after having been by me first duly sworn, on oath deposed and stated the following:

1. My name is Linda Markle. I am over the age of eighteen (18) years and I am qualified to make this affidavit. I have personal knowledge of the facts stated herein based upon the performance of my duties as Bankruptcy Specialist of PACCAR Financial Corp., and the facts stated herein are true and correct.

2. I am one of the custodians of records, books, files and banking records of PACCAR Financial Corp. ("PACCAR" or "Movant") as those records, books, files and banking records pertain to the loans and extensions of credit by PACCAR to 57 Concrete LLC ("57 Concrete"), one of the debtors in the above, jointly administered bankruptcy proceeding. I have personally worked on said records, books, files and banking records, and, as to the following

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 57 Concrete LLC (0886), 57 Fuels LLC (5550), 57 Logistics LLC (4104), and 57 RGV Machinery LLC (7906). The Debtors' service address is 4877 Western Road, Mission, Texas 78574.

facts, I know them to be true of my own knowledge or I have gained knowledge of them from the PACCAR's business records, which are kept by PACCAR in the regular course of its business, and it was the regular course of business of PACCAR for an employee or a representative of said business, with knowledge of the acts, conditions, or opinions recorded, to make those records or to transmit the information to be included in such records; and such records were made at or near the time or reasonably soon after the acts, conditions or opinions recorded. Exhibits "A" through "C" constitute the business records of PACCAR.

3. 57 Concrete filed its voluntary petition for relief in bankruptcy case # 25-90818 on December 19, 2025 (the "First Petition Date"). On March 26, 2026 (the "Second Petition Date"), 57 Fuels LLC ("57 Fuels"), 57 Logistics LLC ("57 Logistics"), and 57 RGV Machinery LLC ("RGV") filed their voluntary petitions for relief.

**A. Facts Relevant to the Agreement**

4. On or about April 10, 2025, 57 Concrete, as buyer, and Movant, as secured party, entered into a Direct Loan Security Agreement (the "Agreement'), whereby 57 Concrete obtained financing for the following four (4) vehicles (the "Vehicles") for $829,587.83 at 8.99% interest:

| Description | VIN |
| --- | --- |
| 2025 Kenworth T880 with body S/N 105HP2420058 | 1NKZLK0X3SJ175832 |
| 2025 Kenworth T880 with body S/N 105HP2420063 | 1NKZLK0X2SJ175837 |
| 2025 Kenworth T880 with body S/N 105HP2420064 | 1NKZLK0X4SJ175838 |
| 2025 Kenworth T880 with body S/N 105HP2420065 | 1NKZLK0X6SJ175839 |

A true and correct copy of the Agreement and all amendments thereto is attached hereto and incorporated by reference for all purposes as Exhibit "A."

3. Pursuant to the terms of the Agreement, 57 Concrete was to make seventy-two (72) monthly payments to PACCAR in the amount of $15,006.35 each commencing on May 25,

2025.

4. Pursuant to the terms of the Agreement, Movant was granted a security interest in the Vehicles. PACCAR duly perfected its security interest in the Vehicles by notating its security interest on the Vehicles' respective Texas Certificates of Title. True and correct copies of the Vehicles' respective Electronic Title Copies are collectively attached hereto and incorporated herein as Exhibit "B."

5. Prior to the First Petition Date, 57 Concrete failed to make the payment when due on November 25, 2025. Accordingly, prior to the First Petition Date, 57 Concrete was in default under the terms of the Agreement. PACCAR has accelerated the maturity of the Agreement in accordance with its terms, and has declared the entire unpaid balance due and owing as to the Agreement. As of the First Petition Date, the amount due under the Agreement after accounting for all just and lawful offsets is $791,107.08. A true and correct copy of the Summary of Account is attached hereto and incorporated herein as Exhibit "C."

**B. 57 Concrete 's Equity and Depreciation**

6. The estimated aggregate fair market value of the Vehicles was $805,320.00 at the time of filing December 19, 2025, based on JD Power Retail Valuation prepared by PACCAR's Bankruptcy Specialist. The debt that 57 Concrete owed PACCAR on the date of filing was $791,107.08. Therefore, 57 Concrete has minimal, if any equity in the Vehicles.

7. In addition to the foregoing, the Vehicles are subject to continued and rapid depreciation with continued use by the 57 Concrete. 57 Concrete continues to use the Vehicles in its operations, but no arrangements have been made to adequately protect PACCAR.

8. PACCAR seeks to repossess the 57 Concrete and locate a potential buyer, but first seeks relief from this Court from the Automatic Stay so that a repossession and subsequent sale

may take place. It is also necessary that PACCAR be permitted to inspect the Vehicles to assess their current condition and ensure that the Vehicles are being properly maintained and stored.

**PACCAR FINANCIAL CORP.**

Linda Markle

By: Linda Markle
Its: Bankruptcy Specialist

SUBSCRIBED AND SWORN TO before me by the said Linda Markle, Bankruptcy Specialist for PACCAR Financial Corp., on this the 2 day of September, 2026, to certify which witness my hand and seal of office.

VANNIE CAO
MY COMM. EXP. 01-06-30
NOTARY PUBLIC
COMM. NO. 22006709
STATE OF WASHINGTON

Vannie Cao ; KING COUNTY , WASHINGTON
Notary Public In and For Said County and State

Exhibit A

PACCAR FINANCIAL

# DIRECT LOAN SECURITY AGREEMENT

This DIRECT LOAN SECURITY AGREEMENT ("Security Agreement"), made on April 10, 2025 by and between **57 Concrete, LLC** a business with its principal place of business at **4877 Western Rd, Mission, Texas 78574** ("Debtor") and **PACCAR Financial Corp.** a Washington corporation with an address at **777 106th Ave. NE, Bellevue, Washington 98004** ("Secured Party").

**1. INDEBTEDNESS.** For value received, Debtor promises to pay Secured Party at its office located at the address stated above or such other place as Secured Party designates.

The amount owed herein shall be repaid in consecutive installments (including both principal and interest) as follows:

| INSTALLMENTS | | |
|---|---|---|
| PAYMENT DATE | NUMBER OF PAYMENTS | PAYMENT AMOUNT |
| May 25, 2025 | 72 | $15,006.35 |

beginning May 25, 2025 and on the same day of each month thereafter (each a "Payment Date") until April 25, 2031, when the entire unpaid balance of principal and interest, plus any other accrued charges, shall become due and payable. The original principal balance herein is $829,587.83, and interest paid on the unpaid principal balance from and including the date hereof shall be calculated at the rate of 8.99 % per annum. Interest start date is April 10, 2025.

The interest accrued may vary each month based on the timeliness of receipt of payments compared to the Payment Dates outlined above . Late payments will cause total interest paid to be higher than originally expected, and early payments will cause total interest to be lower than originally expected. The final payment will be adjusted to reflect the timeliness of payment receipt.

The principal balance includes one or more official fees in the total amount of $0.00, a document preparation fee of $650.00
Debtor may prepay in full, but not in part, its entire indebtedness hereunder upon payment of a premium equal to 1/12 of 1% (.00083) of the current principal balance at the time of such prepayment multiplied by the number of full months remaining in the term of the Security Agreement, provided that such prepayment penalty is not prohibited by applicable state law, otherwise at the highest prepayment penalty Debtor can legally obligate itself to pay and/or Secured party can legally collect.

**2. USE OF PROCEEDS.** Secured Party is hereby irrevocably authorized and directed to disburse the proceeds of this Security Agreement as follows:

| AMOUNT | PAYEE NAME | PAYEE ADDRESS |
|---|---|---|
| $828,937.83 | MHC Kenworth - Dallas | 4040 Irving Blvd, Dallas, Texas 75247 |
| 650.00 | PACCAR Financial Corp | 2501 S State Hwy 121 Bus Ste 800, Lewisville, Texas 75067 |

Debtor hereby acknowledges and agrees that the proceeds of this Security Agreement will be used for commercial or business purposes and will not be used for personal, family or household purposes.

Secured Party may disburse the proceeds using checks, drafts, orders, transfer funds, or any other method or media Secured Party deems desirable. Disbursement may be made in Secured Party's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

**3. SECURED INDEBTEDNESS.** This Security Agreement secures the payment of the indebtedness set forth above and any and all other obligations and liabilities of Debtor to Secured Party whether due or to become due, direct or contingent, now existing or hereafter incurred of any nature whatsoever, including without limitation all legal fees, court costs and expenses of whatever kind incident to the collection of any of said indebtedness or "Indebtedness". Without limiting the generality of the foregoing, this Security Agreement secures the payment of all amounts which constitute part of the Indebtedness and would be owed by Debtor to Secured Party but for the fact that they are unenforceable or not allowable due to the existence of a bankruptcy, reorganization or similar proceeding involving Debtor.

**4. GRANT OF SECURITY INTEREST.** Debtor hereby grants to Secured Party, its successors and assigns forever, a security interest in and against the following equipment, motor vehicles, fixtures, goods, general intangibles, and any additions, attachments, accessories and accessions thereto, any substitutions, replacements or exchanges therefor, and any and all proceeds of any and all other of the foregoing and, to the extent not otherwise included, all (a) payments under insurance (whether or not Secured Party is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing and (b) cash, all of which property and proceeds is hereinafter individually and collectively referred to as the "Collateral":

PACCAR FINANCIAL

# DIRECT LOAN SECURITY AGREEMENT

| DESCRIPTION OF COLLATERAL | | | | |
|---|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION | COMMENT |

****************************************** *SEE COLLATERAL ADDENDUM* ****************************************************

**5. RIGHTS OF SECURED PARTY IN THE COLLATERAL.** The surrender of any document evidencing the Indebtedness or any other obligation or liability secured hereby, upon payment or otherwise, shall not affect the rights of Secured Party to retain the Collateral for such other obligations and liabilities as may then exist. Any third person at any time and from time to time holding all or a portion of the Collateral shall be deemed to be holding and shall hold the Collateral as the agent of, and as pledge holder for, Secured Party. At any time and from time to time, Secured Party may give notice to any third person holding all or any portion of the Collateral that such third person is holding the Collateral as the agent of, and as pledge holder for, Secured Party.

**6. DEBTOR REPRESENTATIONS AND WARRANTIES.** Debtor represents and warrants as follows: (a) If Debtor is a corporation, (i) it is duly organized, validly existing and in good standing in its state of incorporation and is authorized to conduct its business in all of the jurisdictions wherever it engages in such business, and (ii) this Security Agreement is executed pursuant to authority of its Board of Directors and with the consent of its shareholders; (b) Debtor is the legal and beneficial owner of the Collateral free and clear of any lien, security interest, option or other charge or encumbrance except for the security interest created by this Security Agreement. No effective financing statement or other document similar in effect covering all or any part of the Collateral is on file in any recording office, except as may have been filed in favor of Secured Party relating to this Security Agreement. Debtor has no trade names other than those previously disclosed to Secured Party; (c) Debtor has exclusive possession and control of the Collateral; (d) This Security Agreement creates a valid first priority security interest in the Collateral, securing the payment of the Indebtedness, and all filings and other actions necessary or desirable to perfect and protect such security interest have been duly taken; (e) No consent of any other person or entity and no authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the perfection or maintenance of the security interest created hereby (including the first priority nature of such security interest); (f) There are no conditions precedent to the effectiveness of this Security Agreement that have not been satisfied or waived; (g) the Collateral will be titled in the State of Texas; (h) Debtor will immediately notify Secured Party in writing of any change in Debtor's principal place of business identified above; and (i) this Security Agreement is entered into in the State of Texas and is governed by its laws.

**7. CERTIFICATE OF TITLE-LIENS.** Debtor agrees that any Certificate of Title on the Collateral will show Secured Party's security interest (lien) and will be delivered promptly to Secured Party. Secured Party shall hold the Certificate of Title until Debtor pays all of the Indebtedness and performs all other obligations under this Security Agreement. Debtor promises not to give any other party a lien or security interest in the Collateral without Secured Party's written consent. Debtor promises not to part with possession of, sell or lease the Collateral without Secured Party's written consent. Debtor hereby (a) Agrees that from time to time, at the expense of the Debtor, Debtor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable, or that Secured Party may request, in order to perfect or protect any security interest granted or purported to be granted hereby or to enable Secured Party to exercise and enforce its rights and remedies hereunder with respect to any Collateral, and (b) Grants to Secured Party the power to sign Debtor's name and on behalf of Debtor to execute and file applications for title, transfers of title, financing statements, notices of lien and other documents pertaining to any or all of the Collateral.

**8. INSURANCE.** Debtor shall keep the Collateral continuously insured against fire, theft, collision, and any other hazard Secured Party specifies by any insurance company Secured Party has approved. The amount of insurance shall be the full insurable value of the Collateral or the full amount of all obligations this Security Agreement secures, whichever is greater. Debtor agrees to deliver promptly to Secured Party certificates or, if requested, policies of insurance satisfactory to Secured Party, each with a standard long-form loss-payable endorsement naming Secured Party or its assigns as loss-payee. The insurance policy shall provide that it can be canceled only after written notice of intention to cancel has been delivered to Secured Party at least ten (10) days before the cancellation date. If the Collateral is lost or damaged, Secured Party shall have full power to collect any or all insurance proceeds and to apply them as Secured Party chooses either (i) to satisfy any obligation secured by this Security Agreement (whether or not due or otherwise matured), or (ii) to repair the Collateral. If Debtor obtains insurance from a company Secured Party has not approved, or fails to obtain any insurance, Secured Party may (but does not have to) obtain any insurance Secured Party desires to protect its interests. If Secured Party does so, Debtor shall reimburse Secured Party upon demand for its expenses. Secured Party shall have no liability at all for any losses which occur because no insurance was obtained or any insurance which has been obtained is incomplete.

PACCAR FINANCIAL

DIRECT LOAN SECURITY AGREEMENT

**9. TAXES.** Debtor agrees to pay before delinquency all taxes, license fees and other governmental charges imposed on the Collateral or its sales or use.

**10. USE OF COLLATERAL.** Debtor shall keep the Collateral in good repair, shall prevent any waste, loss, damage, or destruction of or to the Collateral, shall prevent any unlawful use of the Collateral, and shall not make or allow to be made any significant change in the Collateral or its chassis, body, or special equipment, without Secured Party's written consent. Debtor assumes all risk of damage, loss, or destruction of or to the Collateral, whether or not insured against. Secured Party may examine the Collateral wherever located at any time, and Debtor will inform Secured Party of the Collateral's location upon Secured Party's request.

**11. EXPENSE PAID BY SECURED PARTY.** Debtor agrees to reimburse Secured Party upon demand for any expenses paid by Secured Party such as taxes, insurance premiums, repair bills, title fees, the expenses set forth in Section 16(d) hereof and any other expenses necessary to protect Secured Party's security interest in the Collateral. Debtor's obligation to pay the expenses shall be secured by this Security Agreement.

**12. NO WARRANTY.** If the Collateral is new, there is no warranty other than that of the manufacturer. If the Collateral is used, it is sold "AS IS" and "WITH ALL FAULTS." **SECURED PARTY MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. UNLESS SET OUT IN WRITING AND SIGNED BY SECURED PARTY, THERE ARE NO, OTHER WARRANTIES EXPRESS OR IMPLIED.**

**13. ADDITIONS TO COLLATERAL.** Anything added to the Collateral, including but not limited to engines, transmissions, tires, wheels, fifth wheels, radios and electrical equipment, tanks and any other body or structure, becomes part of the Collateral and is subject to Secured Party's security interest, and must stay with the Collateral if repossessed or returned to Secured Party.

**14. PAYMENT APPLICATION AND DELINQUENCY CHARGES.** All payments shall be applied first to interest and then to principal. For each installment not paid when due, Debtor agrees to pay Secured Party a delinquency charge calculated thereon at the rate of 1-1/2% per month for the period of delinquency or, at Secured Party's option, 5% of such installment (but under no circumstances shall the delinquency charge exceed $50 for contracts governed by Mississippi law, $25 for contracts governed by Nebraska law, nor, for contracts governed by Pennsylvania law, 4% of each overdue installment, per month, for the period of delinquency), provided that such a delinquency charge is not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay and/or Secured Party can legally collect.

**15. DEFAULT.** Time is of the essence of this Security Agreement. The due dates for payments and the performance of the other obligations under this Security Agreement are among its most crucial provisions. Debtor shall be in default under this Security Agreement upon the occurrence of any of the following: (a) Debtor fails to pay on or before the due date the full amount of any scheduled payment, taxes, insurance premium, or other obligation secured by this Security Agreement; (b) Debtor fails to perform any of Debtor's obligations under this Security Agreement; (c) Any representation Debtor has made in this Security Agreement or in any credit application or financial statement Debtor has given to Secured Party in connection with the credit secured by this Security Agreement turns out to be false; (d) Any check, note or other instrument given for a payment is dishonored when presented for payment; (e) The Collateral is seized or levied upon under any legal or governmental process or proceeding against Debtor or the Collateral; (f) Debtor becomes insolvent or subject to insolvency proceedings as defined in the Uniform Commercial Code or becomes subject to bankruptcy; (g) Debtor defaults in the payment or performance of any other agreement in connection with any other obligation for borrowed money; or (h) Secured Party reasonably deems the Collateral in danger of misuse, confiscation, damage, or destruction.

**16. REMEDIES.** In the event of an event of default, Secured Party may declare the entire Indebtedness secured by this Security Agreement immediately due and payable, without protest, presentment, notice, or demand, all of which Debtor waives. All sums remaining unpaid in the agreed or accelerated date of maturity shall bear interest at the rate of 1-1/2% per month, provided that such a rate is not prohibited by law, otherwise at the highest lawful contract rate. If Debtor defaults under this Security Agreement, in addition to the rights that Secured Party has under the law in effect at the time of default, the following provisions shall apply: (a) On Secured Party's demand, Debtor shall deliver possession of the Collateral to Secured Party at a place Secured Party designates reasonably convenient to both parties: (b) Secured Party may enter any premises where the Collateral may be found and take possession of it without notice, demand, or legal proceedings: (c) Secured Party shall give Debtor at least ten (10) days written notice of any sale of the Collateral, which Debtor agrees to be reasonable notice. Notice shall be given at the address specified in this Security Agreement or other such address that Debtor may have previously specified in writing to Secured Party. Notice shall be effective when deposited in the mails, postage prepaid, addressed as provided above: (d) Expenses of retaking, holding, preparing for sale, selling and the like shall include (i) the fees of any attorneys retained by Secured Party and (ii) all other legal expenses incurred by Secured Party. Debtor agrees that it shall be liable for and shall promptly pay any deficiency resulting from any disposition of the Collateral after default.

**17. NO WRONGFUL POSSESSION.** Debtor agrees that if Secured Party repossesses the Collateral or otherwise obtains possession of it, Secured Party will not be in wrongful possession of any property contained in the Collateral or attached to it in which Secured Party does not have a security interest. Secured Party agrees to make any such property available to Debtor to take back at a place reasonably convenient to both parties.

Initial

DEBTOR'S INITIALS

PACCAR FINANCIAL

# DIRECT LOAN SECURITY AGREEMENT

**18. VARIATIONS OF CONTRACT.** No provision of this Security Agreement may be changed or amended unless by a written contract signed by Secured Party. Secured Party's acceptance of late payments does not mean that Secured Party is obligated to accept late payments in the future. No waiver of any default shall operate as a waiver of any other default.

**19. ENTIRE AGREEMENT: SEVERABILITY.** This Security Agreement is the complete and exclusive statement of rights and duties between Debtor and Secured Party. If any provision is held unenforceable, it shall be deemed omitted without affecting the enforceability of the remaining provisions.

**20. BAD CHECKS.** Whenever a check, draft or order given by or on behalf of Debtor, for the purpose of payment of any obligation arising under this Security Agreement, has been dishonored for lack of funds or credit to pay the same or the maker, issuer or drawer has no account with the drawee, Secured Party may collect from Debtor a reasonable handling fee, not to exceed the maximum amount allowed by law in the state chosen by the parties to govern this Security Agreement.

**21. CROSS COLLATERAL.** Debtor grants to Secured Party a security interest in all collateral securing the payment and performance on any and all absolute or contingent obligations and liabilities of Debtor to Secured Party, now existing or hereinafter arising, whether under this Security Agreement or any other agreement between Debtor and Secured Party, including, but not limited to, security agreement retail installment contracts and equipment lease agreements.

**22. WAIVER OF JURY TRIAL.** Except as otherwise provided by state law Debtor and Secured Party each waive any right to have a jury participate in resolving any dispute, whether sounding in contract, tort, or otherwise, between Secured Party and Debtor arising out of, connected with, related to or incidental to the relationship established between them in connection with this Security Agreement or other instrument, document or agreement executed or delivered in connection therewith or the transactions related thereto. Debtor and Secured Party each hereby agree and consent that any such claim, demand, action or cause of action shall be decided by court trial without a jury and that either may file an original counterpart or a copy of this Security Agreement with any court as written evidence of the consent of the parties hereto to the waiver of their right to trial by jury.

**23. MISCELLANEOUS.** (a) This Security Agreement shall be binding, jointly and severally, upon all parties described as the "Debtor" and their respective heirs, executors, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns. (b) This Security Agreement and any other evidence of the Indebtedness given in connection herewith may be assigned without notice to Debtor and Debtor hereby waives any defense, counterclaim or cross-complaint by Debtor against any assignee, agreeing that Secured Party shall be solely responsible therefor. (c) Debtor waives all homestead and other property exemption laws. (d) Debtor agrees to furnish its annual financial statements and such interim statements as Secured Party may require in form satisfactory to Secured Party. Any and all financial statements will be prepared on a basis of generally accepted accounting principles, and will be complete and correct and fairly present Debtor's financial condition as of the date thereof. Secured Party may at any reasonable time examine the books and records of Debtor and make copies thereof. (e) Debtor acknowledges receipt of a true copy of this Security Agreement, and waives acceptance hereof. (f) This Security Agreement shall continue in full force and effect for so long as there shall remain in existence obligations or liabilities from Debtor to Secured Party and for so long after the payment of all outstanding obligations and liabilities as it is reasonably contemplated that there may be future obligations and liabilities between Debtor and Secured Party, which future obligations and liabilities shall be secured by the security interest granted in this Security Agreement. (g) This Security Agreement may be executed in one or more counterparts, each of which may be deemed to be the original instrument, but all of which together shall constitute but one instrument, and only one set of rights, duties and obligations shall arise therefrom.

**24. ADDITIONAL STATE-SPECIFIC PROVISIONS.** For purposes of Florida law, the term "principal balance" shall mean the "amount financed," i.e., the amount of credit provided to you.

PACCAR FINANCIAL

DIRECT LOAN SECURITY AGREEMENT

## NOTICE TO DEBTOR

1. **LIABILITY INSURANCE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS NOT INCLUDED UNDER THIS SECURITY AGREEMENT.**
2. **DO NOT SIGN THIS SECURITY AGREEMENT BEFORE YOU HAVE READ IT OR IF IT CONTAINS ANY BLANK SPACES.**
3. **YOU ARE ENTITLED TO AN EXACT COPY OF THE SECURITY AGREEMENT YOU SIGN.**
4. **UNDER THE LAW, YOU HAVE THE RIGHT: (A) TO PAY OFF IN ADVANCE THE FULL AMOUNT AND MAY OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE; (B) TO REDEEM THE PROPERTY IF REPOSSESSED FOR A DEFAULT; AND (C) TO REQUIRE, UNDER CERTAIN CONDITIONS, A RESALE OF THE PROPERTY, IF REPOSSESSED.**
5. **KEEP THIS SECURITY AGREEMENT TO PROTECT YOUR LEGAL RIGHTS.**
6. **NOTICE REQUIRED FOR SECURITY AGREEMENTS GOVERNED BY ARIZONA LAW: SECURED PARTY IS REGULATED BY THE ARIZONA DEPARTMENT OF FINANCIAL INSTITUTIONS, AND COMPLAINTS CONCERNING THIS SECURITY AGREEMENT MAY BE MADE TO THAT AGENCY AT 2910 N. 44TH STREET, SUITE 310, PHOENIX, AZ 85018 ((602) 255-4421).**
7. **NOTICE REQUIRED FOR SECURITY AGREEMENTS GOVERNED BY SOUTH DAKOTA LAW: This Security Agreement is subject in whole or in part to South Dakota law, which is enforced by the South Dakota Division of Banking, 1601 N Harrison Ave., Suite 1, Pierre, South Dakota 57501 (605) 773-3421; any improprieties in making the loan or in loan practices may be referred to the division.**
8. **NOTICE REQUIRED FOR SECURITY AGREEMENTS GOVERNED BY TEXAS LAW: To contact PACCAR Financial Corp. about this account, call (940) 484-8100. This contract will be governed by the law of the State of Texas, including Chapter 353 of the Texas Finance Code.**

**DEBTOR ACKNOWLEDGES THAT A TRUE COPY OF THIS SECURITY AGREEMENT HAS BEEN RECEIVED, READ, AND WAS COMPLETELY FILLED IN BEFORE BEING SIGNED.**

IN WITNESS WHEREOF, Debtor and Secured Party, intending to be legally bound hereby, have duly executed this Security Agreement as of the day and year first above written.

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. A photocopy or electronic signed copy of any such counterpart shall have the same force and effect as an original (ink) signature.

| | |
|---|---|
| SECURED PARTY: **PACCAR Financial Corp.** | DEBTOR: **57 Concrete, LLC** |
| BY: DocuSigned by: Alejandra Huerta 6C32DF886323471... | BY: Signed by: 2B0A9CEAB950419... |
| NAME: Alejandra Huerta | NAME: Eliud Cavazos |
| TITLE: Contract Administrator | TITLE: Managing Member |
| DATE: April 10, 2025 | DATE: April 10, 2025 |

**PACCAR FINANCIAL**

# DIRECT LOAN SECURITY AGREEMENT
# COLLATERAL ADDENDUM

This Collateral Addendum is annexed to and made part of a Direct Loan Security Agreement dated April 10, 2025 by and between **PACCAR Financial Corp.** as "Secured Party" and **57 Concrete, LLC** as "Debtor" and describes collateral in which Debtor grants Secured Party a security interest under the terms and conditions of Paragraphs 3 and 4 of the Direct Loan Security Agreement:

| DESCRIPTION OF COLLATERAL | | | | |
|---|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION | COMMENT |
| 2025 | Kenworth | T880 | 1NKZLK0X3SJ175832 | |
| 2025 | Kenworth | T880 | 1NKZLK0X2SJ175837 | |
| 2025 | Kenworth | T880 | 1NKZLK0X4SJ175838 | |
| 2025 | Kenworth | T880 | 1NKZLK0X6SJ175839 | |

| SECURED PARTY: PACCAR Financial Corp. | DEBTOR: 57 Concrete, LLC |
|---|---|
| BY: DocuSigned by: Alejandra Huerta 6[redacted] | BY: Signed by: [redacted] |
| NAME: Alejandra Huerta | NAME: Eliud Cavazos |
| TITLE: Contract Administrator | TITLE: Managing Member |
| DATE: April 10, 2025 | DATE: April 10, 2025 |

PACCAR FINANCIAL

# DIRECT LOAN DOCUMENT CORRECTION ACKNOWLEDGMENT

This is an Amendment to the Direct Loan Security Agreement dated April 10, 2025 or supplemental documents related thereto by and between **PACCAR Financial Corp.** (Secured Party) and **57 Concrete, LLC** (Debtor).

Secured Party and Debtor hereby agree that the document entitled Direct Loan Security Agreement, is amended as follows to conform to the original intent of the parties:

| ITEM TO BE CORRECTED | ORIGINAL WORDING / CALCULATION | CORRECTED WORDING / CALCULATION |
|---|---|---|
| Body Serial # for VIN 175837 | Missing | 105HP2420063 |
| Body Serial # for VIN 175838 | Missing | 105HP2420064 |
| Body Serial # for VIN 175839 | Missing | 105HP2420065 |
| Body Serial # for VIN 175832 | Missing | 105HP2420058 |

Except for the amendments stated above, the original Direct Loan Security Agreement shall remain in full force and effect unchanged.

Effective April 16, 2025 this Amendment is made a part of the Direct Loan Security Agreement referred to above between the undersigned parties.

| SECURED PARTY: | DEBTOR: |
|---|---|
| PACCAR Financial Corp. | 57 Concrete, LLC |
| BY: DocuSigned by: Alejandra Huerta 6C32DE686323471... Alejandra Huerta | BY: Signed by: Eliud Cavazos 2B0A9CEAB950419... Eliud Cavazos |
| TITLE: Contract Administrator | TITLE: Managing Member |
| DATE: April 16, 2025 | DATE: April 16, 2025 |

Please return the original form to: PACCAR Financial Corp.
1700 Woodbrook Street
Denton, TX 76202

Exhibit B

DDI Technology
Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKZLK0X3SJ175832 | 2025 | Kenw | T880 | | | |

| Weight | New/Used | Vehicle Color | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| | New | | 0 | TX | |

Title Number

**Full Name of Owner(s)**
57 Concrete LLC
4877 Western Rd.
Mission, TX 78574

**Liens(s)**
[PACCAR Financial Corp
PO Box 292100
Lewisville, TX 75029]*

Lien Date: 04-10-2025
ELT Number: 91602971200
LTN: 0044214-0097731

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: 6TGR8UHSXB

**THIS IS NOT A TITLE**
**This is an official Premier eTitleLien® Report generated by a customer of DDI Technology.**

DDI Technology

DDI Technology
Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKZLK0X2SJ175837 | 2025 | Kenw | T880 | | | |

| Weight | New/Used | Vehicle Color | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| | New | | 0 | TX | |

Title Number

**Full Name of Owner(s)**
57 Concrete LLC
4877 Western Rd.
Mission, TX 78574

**Liens(s)**
[PACCAR Financial Corp
PO Box 292100
Lewisville, TX 75029]*

Lien Date: 04-10-2025
ELT Number: 91602971200
LTN: 0044214-0097729

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: O6KCWKZVV3

**THIS IS NOT A TITLE**
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.

DDI Technology

DDI Technology
Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKZLK0X4SJ175838 | 2025 | Kenw | T880 | | | |

| Weight | New/Used | Vehicle Color | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| | New | | 0 | TX | |

Title Number

Full Name of Owner(s)
57 Concrete LLC
4877 Western Rd.
Mission, TX 78574

Liens(s)
[PACCAR Financial Corp
PO Box 292100
Lewisville, TX 75029]*

Lien Date: 04-10-2025
ELT Number: 91602971200
LTN: 0044214-0097728

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: PDR4NOXPUC

**THIS IS NOT A TITLE**

This is an official Premier eTitleLien® Report generated by a customer of DDI Technology.

DDI Technology

DDI Technology
Premier eTitleLien®

# Electronic Title Copy

| Vehicle ID Number | Year | Make | Model | Body Style | Lic Plate | Reg Exp |
|---|---|---|---|---|---|---|
| 1NKZLK0X6SJ175839 | 2025 | Kenw | T880 | | | |

| Weight | New/Used | Vehicle Color | Odometer | State | Date Issued |
|---|---|---|---|---|---|
| | New | | 0 | TX | |

Title Number

Full Name of Owner(s)
57 Concrete LLC
4877 Western Rd.
Mission, TX 78574

Liens(s)
[PACCAR Financial Corp
PO Box 292100
Lewisville, TX 75029]*

Lien Date: 04-10-2025
ELT Number: 91602971200
LTN: 0044214-0097730

* Information has been supplied by the lienholder, not the state titling agency.

Document ID: LMXAF8OZVW

THIS IS NOT A TITLE
This is an official Premier eTitleLien® Report
generated by a customer of DDI Technology.

DDI Technology

Exhibit C

Summary of Account for PACCAR Financial Corp.
In re: 57 Concrete, LLC
Ch. 11 Case No. 25-90818 filed 12/19/2025
U.S. Bankruptcy Court for the Southern District of Texas (Houston)

| **PACCAR Financial Corp.** | **Acct xxx 4214** |
|---|---|
| **Collateral** | **2025 Kenworth T880 (4)** |
| **VINS** | **1NKZLK0X3SJ175832 with body S/N 105HP2420058** |
| | **1NKZLK0X2SJ175837 with body S/N 105HP2420063** |
| | **1NKZLK0X4SJ175838 with body S/N 105HP2420064** |
| | **1NKZLK0X6SJ175839 with body S/N 105HP2420065** |
| Principal Balance | 783,040.79 |
| Pre-Payment Penalty | 150.00 |
| Interest due | 7,135.97 |
| Late Charges | 780.32 |
| Fees Due - NSF | 0.00 |
| **Ch. 11 Payoff 12/19/2025** | **791,107.08** |
| | |
| Payments Made | 6 |
| Payments Remaining | 66 |
| | |
| **Monthly Pmt** | **15,006.35** |
| | |
| Delinquent Pymts | 15,006.35 |
| Late Charges Due | 780.32 |
| Fees Due | 0.00 |
| **Past Due on 12/19/25** | **15,786.67** |
| Due Date | 25th of month |
| Due For | **11/25/25** |
| Dealer/Seller | (Direct Loan) |
| | |
| **Contract Date** | **4/10/25** |
| Contract Maturity | 4/25/31 |
| | |
| Personal Guarantor | Eliud Cavazos, Jesus Cepeda, Pedro Cepeda |
| Insurance expires | 5/15/2026 |
| Interest rate | **8.99%** |
| Original Loan Balance | $829,587.83 |
| Per Diem | 192.864019 |