**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **57 CONCRETE LLC, *et al.*,** | § | Case No. 25-90818 (CML) |
| | § | |
| Debtors. | § | (Jointly Administered) |

**NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING THE STATUS OF PLAN DISCUSSIONS SINCE THE AUGUST 31, 2026 STATUS CONFERENCE**

The Official Committee of Unsecured Creditors (the "Committee") submits this notice to inform the Court, in advance of the September 30, 2026 status and scheduling conference, of the status of plan discussions between the Committee and the Debtors since the August 31, 2026 status conference. The Committee does not request any relief by this notice.

## I. THE COURT'S AUGUST 31 DIRECTION

1. At the August 31, 2026 status conference, the Court stayed litigation, including objections between the parties, along with discovery and related deadlines for thirty days and directed the Committee and the Debtors to use that period to discuss plan issues. Tr. 40:13–16; 41:13–42:4; 43:14–22. (Citations to "Tr." are to the transcript of the August 31, 2026 status conference, filed September 4, 2026 [Dkt. 490].) The Court observed that the Committee had not yet seen a plan and asked that it see one quickly. Tr. 42:1–3. The Court stated its hope that any plan would not be one the Committee sees at the same time the Court does. Tr. 45:14–21. The Court directed the Debtors to get a plan on file within twenty days. Tr. 31:19–21.

2. The Court explained that this process "is going to require providing information to the Committee," and contemplated that informal requests for information would be part of the ordinary course of discussion during the standstill. Tr. 51:11–16; 52:8–15.

3. At the same conference, Debtors' counsel advised the Court that the Debtors were "working on the financial modeling now" and preparing a financial forecast to determine what the Debtors can pay unsecured creditors, and that the Debtors were targeting September 18, 2026 to file a plan. Tr. 32:14–16; 36:5–14.

4. The Court set a status and scheduling conference for September 30, 2026 at 10:00 a.m. and asked the parties to be prepared to report on the status of the plan and the status of conversations among the parties. Tr. 46:24–47:10.

## II. EVENTS SINCE AUGUST 31[1]

5. On Saturday, September 5, 2026 (during Labor Day weekend), Debtors' counsel circulated to Committee counsel by email a draft joint chapter 11 plan, identified September 18, 2026 as the targeted filing date, and requested the Committee's consolidated comments by Friday, September 11, 2026. The transmittal designated the draft a confidential settlement communication. The Committee refers to the transmittal only to report the fact and timing of the exchange, and not

[1] The Committee took the Court's direction to heart and forwarded the transcript of the August 31, 2026 hearing on to counsel for the Debtors as soon as the reporter provided it. The Committee had ordered a copy of the transcript with a shorter turnaround time. Based on the Committee's understanding of the directions at the August 31 hearing, and its review of the transcript, Committee counsel surmised that the Court did not want to see any objections to fee applications filed until it gave further instructions on September 30th. The filing of fee applications was permitted. Committee counsel emailed counsel for the Debtors saying that it would reserve its rights to file its objections to Debtors' counsel's fee applications after the parties received further direction from the Court. The Committee notes that despite the entry of the orders on the Debtors' professionals other than Parkins & Rubio, the Committee reserves all rights to dispute whether any of the Debtors' professionals have impermissible conflicts and should otherwise be directed to disgorge any fees or be disqualified for any reason after the Court gives further instructions to the parties. At the August 30 hearing, the Court referred to "fee application day" to be scheduled in mid to late October. The Committee inferred that all fee applications for all estate professionals would be taken up by the Court on that day, and that all evidence, including testimony of witnesses would take place that day. Tr. 48:21–25. [On September 30 the Court will pick dates.] At the hearing he will "take up applications and fees right then and there," and decide whether each applicant gets paid and in what amount, "for all, for everybody." 49:2. "For everyone, for everyone involved." 49:4–7. "[W]e'll have application and fee day in the middle of October," taking the applications "one by one." 49:10–14. He does not expect a long delay. There will be responses, and parties "can take short depositions." 49:15–22. "It will likely be 21, 22, somewhere in there, October 21, 22, all fees, all retentions, applications."

for any purpose prohibited by Federal Rule of Evidence 408(a). The Committee does not describe the draft's terms in this notice.[2]

6. On September 9, 2026, Committee counsel responded by email that the Committee could not provide comments within four business days and requested eleven categories of information needed to evaluate the draft plan. The email stated that the request was not intended to circumvent the Court's order regarding discovery. The categories are listed in the left column of the table following paragraph 9 below. These items constitute basic information (things like liquidation analysis, pro formas) that would be prepared before formulating any plan.

7. Having received no response, Committee counsel followed up by email on September 14, 2026, and again on September 16, 2026. In its September 16 emails, the Committee advised that it could not evaluate the proposed treatment of general unsecured claims without the requested information, that it was not in a position to agree to that treatment on the information then available, and that it reserved all rights. The Committee asked that the requested items be provided in their current form, stated that it was not asking the Debtors to wait until a disclosure statement was complete, and asked that the Debtors identify any requested item that does not presently exist.

8. On September 16, 2026, Debtors' counsel responded in two emails. In the first, Debtors' counsel stated that the Debtors would likely not meet the September 18 filing date, that they intend to have the plan and a disclosure statement on file before the September 30 status conference, and that many of the requested items, including the financial projections and liquidation analysis, relate to information that will be included in the disclosure statement.

[2] The draft plan included references to "Annex A," but there was no Annex A attached.

Debtors' counsel also asked whether the Committee objects to the proposed treatment of general unsecured claims.

9. In the second email, Debtors' counsel responded to each of the Committee's eleven categories. The Committee summarizes the requests and responses as follows:

| No. | Committee request (Sept. 9) | Debtors' response (Sept. 16) |
|---|---|---|
| 1 | Annex A in complete form. | To be provided when ready; the Debtors are working on it. |
| 2 | Draft disclosure statement, including the liquidation analysis and projections, in its present form. | To be provided when ready; the Debtors are continuing to work on the disclosure statement and accompanying information. |
| 3 | Schedule of contracts and leases; estimate of rejection damages claims by Debtor. | No separate schedule. Other than one lease already assumed, the contracts and leases on each Debtor's Schedule G will ride through the plan; no rejection damages claims presently anticipated. |
| 4 | Projected monthly cash flows for each Debtor for the full plan payment period. | A forecast supporting the plan will be provided with the disclosure statement. |
| 5 | The Debtors' thirteen-week rolling cash flow forecasts. | No current thirteen-week forecast exists. Prior versions were drafts prepared at the direction of counsel and are privileged work product. A thirteen-week forecast is not required for the plan or disclosure statement. |
| 6 | Chapter 7 liquidation analysis for each Debtor, by Class, prepared in accordance with section 1129(a)(7), together with the asset values used and the basis for each. All appraisals, valuations and reports relied upon in preparing the liquidation analysis. | The liquidation analysis will be included with the disclosure statement. |
| 7 | Post-Effective Date working capital arrangement, including the Charter Capital facility [Dkt. 77], whether there is any replacement facility, any term sheet or commitment, the assumed advance rate and cost, and the projected outstanding balance on the Effective Date. | No present plans to alter or replace the existing Charter Capital arrangement. No plans for another facility. |

| No. | Committee request (Sept. 9) | Debtors' response (Sept. 16) |
|---|---|---|
| 8 | The equipment fleet plan underlying the projections: units to be retained, surrendered, transferred, or sold, by Debtor and by lender, including the further dispositions described at the August 31, 2026 hearing as having been reduced from approximately twenty to approximately five to ten. | To be addressed in Annex A. |
| 9 | The Debtors' analysis of the transition described at the August 31, 2026 hearing from homebuilding work paid cash on delivery to larger commercial projects paid on sixty- to ninety-day terms, and how that transition is reflected in the working capital assumptions. | The Debtors do not have a separate written analysis of this issue beyond what I explained orally at the August 31 hearing. The projections being prepared for the Disclosure Statement will reflect the Debtors' anticipated operations and working capital requirements. |
| 10 | Proposed Disputed Claims Reserve deposits for the Cabello, Fox Funding Group LLC, and IOU Central claims, and the basis for each. | Described how the reserve operates.<br><br>No amounts stated. |
| 11 | Cash on hand by Debtor and by account; balances and availability under the Charter Capital facility and the insurance financing [Dkt. 280]. | Cash on hand is set forth in the monthly operating reports and attached account statements. Facility balances and availability not addressed. |

10. At the August 31 conference, Debtors' counsel described the financial forecast then in preparation as the means "to determine what we can pay the unsecured creditors." Tr. 36:12–14. On September 16, Debtors' counsel asked whether the Committee objects to "the proposed treatment of general unsecured creditors under the plan," and, in the same exchange, advised that the Debtors "are continuing to work toward completing" the projections and the liquidation analysis.

11. As of the date of this notice, no plan or disclosure statement has been filed, and the Committee has not received Annex A, a draft disclosure statement, financial projections, or a liquidation analysis for any Debtor. At the August 31 conference, the Court directed the Debtors

to get a plan on file within twenty days [Tr. 31:19-21]. It has been more than twenty days. Hence, the Committee wishes to advise the Court before any more time passes. The Committee has received no further response regarding any of the items it requested, despite having asked that the Debtors provide said items no later than Thursday, September 17th. The Debtors have not stated when those materials will be provided to the Committee. The Committee files this notice based on the Court's directions at the August 31st status conference. The Committee is mindful of the fact that only five business days remain before the September 30th status conference.

## III. THE COMMITTEE'S POSITION

12. The Committee has not taken a position on the Debtors' proposed treatment of general unsecured claims because it has not received the information needed to evaluate it. Treatment of unsecured claims over a multi-year term depends on the feasibility of the payments proposed, 11 U.S.C. § 1129(a)(11), and on whether creditors will receive at least what they would receive in a chapter 7 liquidation, 11 U.S.C. § 1129(a)(7). Neither can be assessed without projections and a liquidation analysis.

13. The Committee remains available to meet with the Debtors at any time and will evaluate the requested materials promptly upon receipt.

14. This notice is submitted for informational purposes. The Committee does not request any relief by this notice. Counsel for the Committee is available for a hearing before September 30, 2026, should the Court wish to discuss any matter sooner.

15. The Committee reserves all rights, claims, objections, and positions, and nothing in this notice waives any privilege or protection, including any protection under Federal Rule of Evidence 408.

Dated: September 22, 2026

Respectfully submitted,

**GRABLE MARTIN PLLC**

*/s/ Mary Elizabeth Heard*
Mary Elizabeth Heard
Texas Bar No. 24096727
S.D. Tex. No. 2943737
7700 Broadway St., Suite 104-308
San Antonio, Texas 78209
Telephone: (210) 572-4925
Email: meheard@grablemartin.com

*Counsel to the Official Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2026, a true and correct copy of the foregoing was served through the Court's CM/ECF system on all parties registered to receive electronic notice in these cases, including counsel for the Debtors, the Office of the United States Trustee, and John Melko, Foley & Lardner LLP, as counsel to Parkins & Rubio LLP.

*/s/ Mary Elizabeth Heard*
Mary Elizabeth Heard