**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Case No. 25-90818 (CML) |
| 57 Concrete LLC, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

**DEBTORS' AND PARKINS & RUBIO LLP'S OBJECTION TO THE AMENDED MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO (I) DISQUALIFY PARKINS & RUBIO LLP, (II) DENY AND DISGORGE COMPENSATION, AND (III) DIRECT THE APPOINTMENT OF A CHAPTER 11 TRUSTEE [DKT. NO. 467]**
[Relates to Dkt. Nos. 394, 395, and 467]

The above-captioned debtors and debtors in possession (the "Debtors") and Parkins & Rubio LLP ("P&R") file this objection (the "Objection") to the *Amended Motion of the Official Committee of Unsecured Creditors of 57 Concrete LLC to (I) Disqualify Parkins & Rubio LLP Under 11 U.S.C. §§ 327(a) and 327(c), (II) Deny and Disgorge Compensation Under 11 U.S.C. § 328(c), and (III) Direct the Appointment of a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)* [Dkt. No. 467] (the "Amended Motion") filed by the Official Committee of Unsecured Creditors (the "Committee"), and in further support of the *Debtors' Supplemental Application to Employ Parkins & Rubio LLP* [Dkt. No. 395] and the *Debtors' Application to Employ Michael Fishel and the Fishel Law Group as Conflicts Counsel* [Dkt. No. 394] (together, the "Applications"). The Debtors and P&R incorporate, and do not repeat, their Omnibus Opposition [Dkt. No. 451] (the "Opposition"), the Supplemental Declaration of Charles M. Rubio [Dkt. No. 473] (the

[1] The jointly administered Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 57 Concrete LLC ("57 Concrete") (0886), 57 Fuels LLC ("Fuels") (5550), 57 Logistics LLC ("Logistics") (4104), and 57 RGV Machinery LLC ("RGV") (7906). The Debtors' service address is 4877 Western Road, Mission, Texas 78574.

"Supplemental Declaration"), their response at Dkt. No. 482, and P&R's joinder at Dkt. No. 534. In support, the Debtors and P&R respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Committee asks the Court to remove the Debtors' general bankruptcy counsel in the middle of four jointly administered cases, to strip that counsel of its compensation, and to displace the management of an operating business with a chapter 11 trustee. It does so weeks before the hearing on a disclosure statement for a plan that pays unsecured creditors 100% of their allowed claims with interest. Relief of such consequence requires, at a minimum, that the Committee actually decided to seek it. The record shows it did not.

2. The Committee filed its original motion on July 23, 2026 [Dkt. No. 431] (the "**Original Motion**"). Two days later, one of the Committee's two members objected, and he has since said in writing, repeatedly, that he never authorized the motion and wants it withdrawn. The Committee nonetheless replaced the Original Motion on August 20 with the Amended Motion now before the Court. Its own response to the United States Trustee confirms the gap. It concedes that "[n]o formal vote was taken," and that the Amended Motion "rests on" an "emergency" declared by the Committee's Chair and its own counsel after the dissenting member declined to attend Committee meetings unless the motion was withdrawn. [Dkt. No. 541 ¶¶ 6, 9, 10, 22.] Under the Committee's bylaws, a quorum requires both members and Committee action requires a majority. On a two-member committee, one member and the Committee's lawyer are not the Committee.

3. The motion itself has not held together. Four weeks after filing the Original Motion, and within the safe-harbor period of a Rule 9011 letter, P&R sent outlining numerous inaccuracies the Committee superseded it in its entirety, withdrawing or correcting every contention P&R challenged. [Amended Motion ¶¶ 4–7.] The Committee now concedes, among

other things, that P&R did not conceal the affiliate representation and has never prosecuted an estate claim against any affiliate. [*Id.* ¶ 4.] What remains in the Amended Motion is a new central theory—that P&R served the Debtors' managers in their capacity as guarantors—built largely on exhibits the Committee attached to the Original Motion. Yet the relief the Committee seeks is unchanged.

4. On the merits, the law requires far more than the Amended Motion supplies. In the Fifth Circuit, an actual conflict must be "factually substantiated upon the evidentiary record,"[2] after a "painstaking analysis of the facts and precise application of precedent."[3] A finding of conflict "should nonetheless not be lightly made" and should be reserved for cases where the facts "establish the conflict of interest with more clarity and more certainty."[4] And courts in this District require a movant seeking a chapter 11 trustee to prove the need for one by clear and convincing evidence.[5]

5. Measured against those standards, the Amended Motion fails on each of its theories:

(a) **The intercompany theory.** No estate has asserted a claim against another, and P&R has taken no position for one estate against another. [Amended Motion ¶ 4(d).] The reservation of rights the Committee calls a "live" dispute is one the Committee itself requested; it defers the issue rather than asserting it. That is the dormant, conflict *Global Marine* held is not disqualifying.

(b) **The guarantor theory.** P&R does not represent the managers; they have their own counsel. Every item the Committee lists had an estate purpose, and none was "contrary to the interests of the estate" or "colored by loyalty to a third party."[6] The Debtors' Joint Chapter 11 Plan of Reorganization [Dkt. No. 514] (the "**Plan**") releases no guaranty and preserves every estate claim against the managers.

---

2 *In re Global Marine, Inc.*, 108 B.R. 998, 1001–02 (Bankr. S.D. Tex. 1987).

3 *In re West Delta Oil Co.*, 432 F.3d 347, 355 (5th Cir. 2005) (quotation omitted).

4 *In re Office Prods. of Am., Inc.*, 136 B.R. 983, 988 (Bankr. W.D. Tex. 1992).

5 *In re Ford Steel, LLC*, 629 B.R. 871, 889 (Bankr. S.D. Tex. 2021); *In re Global Clean Energy Holdings, Inc.*, 2026 WL 1459905, at *10 (S.D. Tex. May 25, 2026), *appeal docketed*, No. 26-20277 (5th Cir. May 28, 2026).

6 *Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 464 (5th Cir. 2012).

(c) **The disclosure theory.** Bankruptcy Rule 2014 requires disclosure of the professional's own connections, and every person the Committee names was on P&R's searched-party schedules. A disclosure dispute is not a disqualifying conflict, and the Fifth Circuit's remedy for incomplete disclosure is proportionate, not forfeiture.[7]

(d) **The trustee request.** Managers who hold contingent indemnity claims as guarantors are a feature of nearly every closely held chapter 11 case. The Committee concedes that a structural conflict without more is not cause [Amended Motion ¶ 116], and it identifies no conduct that has ever justified displacing management.

6. All of this arises in a case that is working. Since the petition date, the business has stayed fully operational and its workforce has grown. The Debtors have reached adequate protection agreements with more than ten equipment lenders and have resolved significant disputed claims. Commercial Credit Group, Inc. ("**CCG**"), the Debtors' largest secured creditor, supports the Debtors' reorganization and the continuity of current management. [Dkt. No. 450, Recitals G–I.] The Plan pays unsecured creditors 100% of their allowed claims with interest, and the disclosure statement hearing is set for November 3. [Dkt. No. 451 ¶ 58; Plan § 4.3.] Disqualifying P&R and installing a chapter 11 trustee at this juncture would put all of that at risk with no corresponding benefit to creditors.

## BACKGROUND

7. The Debtors and P&R rely on the Background in the Opposition [Dkt. No. 451 ¶¶ 11–20] and note only these later developments:

- *The Supplemental Declaration.* On August 27, 2026, P&R disclosed each connection on which the Committee's guarantor theory rests and confirmed that it represents neither any manager nor the managers' own counsel, Shelby A. Jordan of Jordan & Ortiz, P.C. [Dkt. No. 473 ¶¶ 7, 47–58.]

- *Mr. Castorena's objections.* The Committee has two members: Pico Propane and Fuels (Robert W. Chalmers, Chair) and Arctic Ice 1, Inc. (Pedro Castorena, Vice-Chair). [Dkt. No. 509-3, arts. III § 1, V.] Mr. Castorena has denied in writing, three times, that he authorized the motions: on July 30, 2026 (filed "without my vote, my consent, and therefore without my authorization," after "[a]n unstable internet connection dropped me from the meeting") [Ex. A (certified translation)]; again on

[7] *Id.* at 465–66.

August 29, 2026 ("I did not authorize those motions, nor was I even present at the meeting during which they were purportedly approved") [Ex. B]; and most recently on October 1, 2026 ("NOT AUTHORIZED BY ME, WHO REPRESENTS 50% of the committee") [Ex. C].

- *The Committee's admissions.* Responding to the United States Trustee's motion [Dkt. No. 532], the Committee concedes that "[n]o formal vote was taken" and that the Amended Motion "rests on" an emergency declared on July 31 by the Chair and Committee counsel after Mr. Castorena declined to attend meetings unless the motion was withdrawn. [Dkt. No. 541 ¶¶ 6, 10, 22.]

- Mr. Castorena has steadfastly maintained that he never authorized the filing of the initial motion.

- *The Plan.* The Debtors' Joint Chapter 11 Plan of Reorganization [Dkt. No. 514] (the "Plan") pays unsecured creditors in full, with interest; requires Court approval of any intercompany compromise; releases no guaranty; and preserves all estate claims, including against managers. [Plan §§ 4.2 ¶ 9, 4.3, 4.4, 6.6, 12.2.] The disclosure statement hearing is November 3, 2026.

## ARGUMENT

## I. THE COMMITTEE DID NOT AUTHORIZE THE AMENDED MOTION.

8. No person may appear as attorney for another without authority from the purported client.[8] Under the Committee's bylaws (the "Bylaws"), "both members of the Committee must be present for there to be a quorum," and Committee action requires a majority at a meeting with a quorum or majority consent by a recorded poll. [Dkt. No. 509-3, art. VII §§ 4, 7.] On a two-member committee, a majority is both members.[9] None of the Committee's responses overcomes that:

- *"The Debtors lack standing to question internal governance."* [Dkt. No. 541 ¶ 25.] The question is whether the party prosecuting a contested matter against the Debtors and P&R authorized it, which the Court may require of any filing. *In re EBP, Inc.*, on which the Committee relies, decided a debtor's challenge to committee counsel's

[8] *Maiz v. Virani*, 311 F.3d 334, 341 n.5 (5th Cir. 2002); *see Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927) (a court "has power, at any stage of the case, to require an attorney … to show his authority to appear").

[9] *See* 11 U.S.C. § 1103(a) (committee selects counsel "at a scheduled meeting of the committee at which a majority of the members of such committee are present").

authority on the merits,[10] and the United States Trustee, whose standing is undisputed, raised the issue first. [Dkt. No. 532.]

- *"Counsel is presumed to act with authority."* [Dkt. No. 541 ¶¶ 19, 24.] The presumption is rebuttable,[11] and both sides rebut it here: Mr. Castorena's three written denials and the Committee's concession that no vote was taken. The Committee's cases are not to the contrary.[12]

- *"The members agreed with the strategy, and no one objected."* [Dkt. No. 541 ¶¶ 6, 8.] Agreement with a "strategy" and silence while counsel "addressed the finalized motion" are not a vote. A body that acts through its members does not act without notice, a meeting, and a vote.[13] The Bylaws require Committee counsel to keep attendance rosters and minutes [Dkt. No. 509-3, art. VI § 3(c)–(d)], and the Committee identifies none for June 9, July 23, or July 31. A meeting that loses a member may continue only if action is approved by "at least a majority of the required quorum," which here means both members [*id.* art. VII § 4], and Mr. Castorena had been dropped from the meeting. [Ex. A.] Nor is silence ratification without full knowledge of the material facts,[14] and the Committee does not say the finalized motion was translated for a member whom its counsel acknowledged needed translation. [Dkt. No. 482 ¶ 14.]

- *"The Chair and counsel declared an emergency."* [Dkt. No. 541 ¶¶ 10, 22.] Article VII, Section 8 permits action without a meeting when an emergency justifies it. It does not let one member and the Committee's lawyer override the other member on the very matter he opposes; that reading would nullify the quorum and majority rules. Nor was there an emergency. It was the safe-harbor deadline in P&R's Rule 9011 letter, which exposed Committee counsel, and the Committee then took twenty days to file.

- *"The June 9 authorization covers the Amended Motion."* [Dkt. No. 541 ¶ 23.] The Amended Motion "amends and supersedes the Original Motion in its entirety" and rests on a new central theory. [Amended Motion ¶¶ 4–7.] Authority to pursue grounds the Committee has since abandoned does not support a new filing with

---

10 171 B.R. 601, 602–03 (Bankr. N.D. Ohio 1994).

11 *City of Roanoke v. Town of Westlake*, 111 S.W.3d 617, 629–30 (Tex. App.—Fort Worth 2003, no pet.) (presumption rebutted by evidence that counsel "was never authorized by valid action of the governing body"); *see Infante v. Bridgestone/Firestone, Inc.*, 6 F. Supp. 2d 608, 610 (E.D. Tex. 1998).

12 *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), 2022 WL 1295928, at *17 (Bankr. S.D.N.Y. Apr. 29, 2022) ("no one question[ed] the Committee's authority"); *EBP*, 171 B.R. at 602 (no evidence of any limit on counsel's authority).

13 *Air Park-Dallas Zoning Comm. v. Crow Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 907 (Tex. App.—Dallas 2003, no pet.); *see also In re ABC Auto. Prods. Corp.*, 210 B.R. 437, 445 (Bankr. E.D. Pa. 1997).

14 *Tex. First Nat'l Bank v. Ng*, 167 S.W.3d 842, 861–62 (Tex. App.—Houston [14th Dist.] 2005, pet. granted, judgm't vacated w.r.m.); *see Williams v. Vreeland*, 250 U.S. 295, 299 (1919).

different consequences,[15] and the Committee itself says the Amended Motion "rests on" the July 31 determination. [Dkt. No. 541 ¶ 22.]

- *"Authorization is privileged."* [*Id.* ¶ 28.] The Committee concedes that the fact and date of its agreement are not privileged. Neither is who attended, whether a vote or poll was taken, or what was authorized.[16]

- *"Mr. Castorena's contacts with the Debtors undermine him."* [Dkt. No. 541 ¶¶ 9, 30.] His objections began one week after the filing and have been consistent, the Bylaws permit members to obtain information "directly … from the Debtor" [Dkt. No. 509-3, art. IX § 2(iv)], and his credibility does not change the Committee's own admissions.

9. The Amended Motion should be denied on this ground alone.

## II. THE CONFLICT THEORIES FAIL THE GOVERNING STANDARD.

10. A finding of conflict "should nonetheless not be lightly made" and requires facts that "establish the conflict of interest with more clarity and more certainty."[17] The Committee's own rewrite undercuts any claim to certainty. Within the safe-harbor period of P&R's Rule 9011 letter, it superseded its motion in its entirety, abandoning its concealment and estate-claim contentions, while its new guarantor theory rests on facts already attached to the Original Motion. [Amended Motion ¶¶ 4–7; Dkt. No. 431 ¶¶ 22–24, 33–36 & Exs. 1, 3–4.]

## III. THE INTERCOMPANY THEORY FAILS: ANY CONFLICT IS DORMANT, NOT ACTUAL

11. Section 327(c) bars employment only for an "actual conflict of interest," and a conflict remains potential "as long as the representative is not required to make a choice in faithfully serving all of the represented debtors."[18] The Committee concedes that no estate has

---

15 Restatement (Third) of Agency § 2.02 & cmt. h (2006); *see Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 180 n.4 (5th Cir. 2016).

16 *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).

17 *In re Office Prods. of Am., Inc.*, 136 B.R. 983, 988 (Bankr. W.D. Tex. 1992); *see In re Global Marine, Inc.*, 108 B.R. 998, 1001–02 (Bankr. S.D. Tex. 1987).

18 *Global Marine*, 108 B.R. at 1004; *In re KLE Equip. Leasing, LLC*, 672 B.R. 756, 765–67 (Bankr. E.D. Wis. 2025).

asserted a claim against another and that P&R has filed nothing against any affiliate. [Amended Motion ¶¶ 4(d), 88.] Its arguments fail:

- *"A reserved right is a live one."* [*Id.* ¶¶ 87–89.] The reservation of allocation rights in the stipulation with Commercial Credit Group, Inc. ("CCG") [Dkt. No. 326 ¶ 8; Dkt. No. 368 ¶ 6] sets the issue aside; it asserts nothing, and the Committee requested it. [Amended Motion ¶ 42.] That is, the "dormant" conflict *Global Marine* held is not disqualifying; if it ever becomes "open and ongoing," the remedy is special counsel,[19] which the Debtors proposed on July 2. [Dkt. No. 394.]

- *"The PSA prices the estates' reserved rights."* [Amended Motion ¶ 91.] The Plan Support Agreement with CCG [Dkt. No. 450] allocates none of CCG's claim, as the Committee acknowledges [Amended Motion ¶ 87]; leaves the claim amount to the Court [Dkt. No. 450 § 1.1(a)]; excuses good-faith fiduciary action [*id.* § 8.1]; and, at most, lets CCG end its plan support without affecting the adequate protection stipulation [*id.* § 9.1(c)].

- *"Separate ownership distinguishes Global Marine." In re N.S. Garrott & Sons* applied the pre-1984 text of section 327(c) and involved a solvent and an insolvent estate, a plan moving money between them, and counsel filing a claim for one estate without objecting to it for the other.[20] Here, the estates are integrated (RGV's "primary, and effectively sole, customer is 57 Concrete" [Dkt. No. 191 ¶ 7]), each estate's unsecured creditors are paid in full from that estate [Plan § 4.3], and every intercompany decision is committed to conflicts counsel or the Court.[21]

- *"Interwest and Git-N-Go."* Neither adopts a per se rule or binds this Court, and each turned on facts absent here: a revenue-commission contract between the debtors in *Interwest*, and counsel's representation of the parent-guarantor and lender in the transactions at issue in *Git-N-Go*.[22]

## IV. THE GUARANTOR THEORY FAILS: P&R REPRESENTS ONLY THE DEBTOR.

12. P&R's engagement excludes officers and owners [Dkt. No. 86-3]; Jordan & Ortiz, not P&R, represent the guarantors pursuant to their own engagement letter [Amended Motion ¶

---

19 *Global Marine*, 108 B.R. at 1004.

20 63 B.R. 189, 192–93 (Bankr. E.D. Ark. 1986); *see Global Marine*, 108 B.R. at 1001–02.

21 *KLE*, 672 B.R. at 766; *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 167 (Bankr. D. Ariz. 1984).

22 *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316–19 (10th Cir. 1994); *In re Git-N-Go, Inc.*, 321 B.R. 54, 59–61 (Bankr. N.D. Okla. 2004); *see In re Global Marine, Inc.*, 108 B.R. 1009, 1011–12 (S.D. Tex. 1988).

83]; and P&R has never represented a manager. [Dkt. No. 473 ¶¶ 51, 54.] The theory that P&R "impliedly" protected them fails:

- *Kendavis and Humble Place are not this case. Kendavis* involved insolvent estates, a plan "inexplicably generous" to equity, and a sale that redirected $4 million to the principals, and the court still cut fees by half rather than denying them.[23] In *Humble Place*, counsel represented the guarantor as a client and the plan "gratuitously" released the guaranties.[24] *Steinmetz* involved simultaneous representation of the principals in their own bankruptcy case.[25] Here there is no client relationship, no guaranty release, and a 100% Plan.

- *The test is action against the estate.* In *American International Refinery*, counsel took an undisclosed retainer from a large creditor, negotiated with it, did not challenge its claim, and drafted a stay-relief motion for it. The Fifth Circuit nonetheless affirmed that there was no disqualifying conflict because counsel took no "action contrary to the interests of the estate."[26] The Committee identifies no such action, only estate actions that also benefited insiders.

- *Each item served the estate*, as the Opposition explains. [Dkt. No. 451 ¶¶ 50–52.] In short: (i) the CCG work addressed collection litigation against the managers whose attention the reorganization required, and the resulting forbearance became the model for other lender stipulations [Dkt. No. 461 ¶ 32(h)]; (ii) the forbearance was one term of a stipulation that kept the equipment in service, with no separate consideration, and the Committee did not object [Dkt. No. 368, Recital F, ¶ 1 & Certificate of Conference]; (iii) the notice provision ensures the Debtors learn immediately of renewed collection against their managers, and it is disclosed [Dkt. No. 326, Recital G; Dkt. No. 473 ¶ 50]; (iv) the common interest agreement preserves every estate duty and claim and confirms that P&R represents only the Debtor [Dkt. No. 482-10 §§ 1.2, 5.2, 6.1–6.3, 7.1]; and (v) the managers' contingent indemnity claims are disallowed while contingent under section 502(e)(1)(B), and the Committee may object to them itself.

- 

[23] *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742, 749–51, 762 (Bankr. N.D. Tex. 1988).

[24] *In re Humble Place Joint Venture*, 936 F.2d 814, 819 (5th Cir. 1991).

[25] *In re Steinmetz Plumbing, Inc.*, 2026 WL 1826349, at *9–10 (Bankr. S.D. Tex. June 24, 2026).

[26] *Waldron v. Adams & Reese, L.L.P. (In re Am. Int'l Refinery, Inc.)*, 676 F.3d 455, 459–64 (5th Cir. 2012); *see also Office Prods.*, 136 B.R. at 990; *KLE*, 672 B.R. at 764.

## V. THE DISCLOSURE AND DISGORGEMENT THEORIES FAIL.

13. *Disclosure.* Bankruptcy Rule 2014(a) requires disclosure of "the person's connections." The managers were on P&R's searched-party schedules from the outset [Dkt. No. 86-2, Sched. 1; Dkt. No. 395-1, Sched. 1]; the intercompany relationships were described in the motion for joint administration [Dkt. No. 191 ¶¶ 6–16]; the Committee concedes the January "no connections" recital concerned P&R's own connections [Amended Motion ¶ 4(c)]; and the Supplemental Declaration addresses each connection the Committee identifies. A disclosure dispute is not an adverse interest, and the remedy is proportionate. In *American International Refinery*, the Fifth Circuit affirmed a reduction of roughly 20% of fees for unintentional omissions that caused no harm.[27]

14. *Disgorgement.* Section 328(c) is permissive.[28] Full denial follows where counsel holds its own disqualifying stake, as in *West Delta*,[29] and even serious findings have produced partial remedies.[30] Each of the Committee's fee categories [Amended Motion ¶ 111 & Prayer ¶ 7] belongs in the fee-application process.[31] P&R's first interim application already excludes and defers the 29.4 hours ($22,245.00) of work for 57 RGV Machinery LLC, 57 Logistics LLC, and 57 Fuels LLC (the "Affiliated Debtors"). [Dkt. No. 461 ¶ 34 & Ex. E.]

---

27 676 F.3d at 465–66; *cf. Matter of Prudhomme*, 43 F.3d 1000, 1002–04 (5th Cir. 1995) (conscious breach).

28 *Global Marine*, 108 B.R. at 1006.

29 432 F.3d at 358.

30 *Office Prods.*, 136 B.R. at 991; *Kendavis*, 91 B.R. at 762; *Am. Int'l Refinery*, 676 F.3d at 465–66.

31 *Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 276 (5th Cir. 2015) (en banc).

## VI. THERE IS NO CAUSE FOR A CHAPTER 11 TRUSTEE.

15. A trustee is "an extraordinary remedy," and the movant must prove the need for one by clear and convincing evidence.[32] The Committee concedes that a structural conflict, without more, is not cause [Amended Motion ¶ 116], and what it offers is structural:

- *The conduct alleged is ordinary.* Managers of closely held debtors routinely guarantee company debt, hold contingent indemnity claims, select counsel, and approve lender stipulations. [*Id.* ¶ 117.] *Cajun Electric* required conduct beyond "inherent" conflicts: failing to collect from members, withholding information, and strategies "designed to break-up and scavenge the assets of the debtor."[33] Every estate claim and guaranty is preserved. [Plan §§ 4.2 ¶ 9, 6.6, 12.2.]

- *The section 1104(a)(2) factors favor management.* The business is operating and its workforce has grown; adequate protection agreements are in place with more than ten equipment lenders; the Debtors have produced more than 15,000 pages and given the Committee QuickBooks access [Aug. 31, 2026 Hr'g Tr. 34:11–14]; and CCG, the largest secured creditor, supports current management [Dkt. No. 450, Recitals G–I], the fact *Ford Steel* relied on in denying a trustee.[34]

## VII. ANY REMAINING CONCERN CAN BE CURED WITHOUT DISQUALIFICATION.

16. In answer to the Court's August 31 question whether any conflict is curable, and without conceding any conflict, the Debtors and P&R renew the safeguards in the Opposition [Dkt. No. 451 ¶¶ 34, 41–45, 50, 59]: the conflicts protocol; retention of conflicts counsel under section 327(e) or, alternatively, section 327(a), with joint representation of the Affiliated Debtors ending on any matter on which their interests diverge; conflicts counsel's independence, including, if the Court considers it appropriate, supervision by a person independent of the manager-guarantors;

---

[32] *In re Ford Steel, LLC*, 629 B.R. 871, 889 (Bankr. S.D. Tex. 2021); *In re Global Clean Energy Holdings, Inc.*, 2026 WL 1459905, at *10 (S.D. Tex. May 25, 2026), *appeal docketed*, No. 26-20277 (5th Cir. May 28, 2026).

[33] *Matter of Cajun Elec. Power Coop., Inc.*, 74 F.3d 599, 600 (5th Cir. 1996) (adopting 69 F.3d 746, 751 (5th Cir. 1995) (E. Garza, J., concurring in part and dissenting in part)).

[34] 629 B.R. at 890.

and continuing supplemental Rule 2014 disclosure by both firms. Any order approving the Applications should include them.[35]

## CONCLUSION

For the foregoing reasons, the Debtors and P&R respectfully request that the Court enter an order: (i) determining, as a threshold matter, that the Committee did not authorize the filing and prosecution of the Amended Motion, and denying the Amended Motion on that ground; (ii) in the alternative, denying the Amended Motion insofar as it seeks disqualification of P&R, denial or disgorgement of P&R's compensation, the appointment of a chapter 11 trustee, and an award of fees and costs to the Committee; (iii) granting the Applications, subject to the safeguards described in Part VII, with all specific fee objections reserved for the fee-application process; and (iv) granting such other and further relief as is just and proper. The Debtors and P&R reserve all rights, including under Bankruptcy Rule 9011.

35 *Global Marine*, 108 B.R. at 1004; *In re WM Distribution, Inc.*, 571 B.R. 866, 873–74 (Bankr. D.N.M. 2017).

Dated: October 12, 2026

**PARKINS & RUBIO LLP**

*/s/ Charles M. Rubio*
Charles M. Rubio
Texas Bar No. 24083768
Jacob T. Towles
Texas Bar No. 24125065
708 Main St., Fl 10
Houston, TX 77002
Email: crubio@parkinsrubio.com
jtowles@parkinsrubio.com
Phone: (713) 715-1660

***Counsel to Debtor 57 Concrete LLC and Proposed Counsel to the Affiliated Debtors***

**FOLEY & LARDNER LLP**

*/s/ John P. Melko*
John P. Melko
1000 Louisiana St., Ste. 2000
Houston, TX 77002
Phone: (713) 276-5727
Email: jmelko@foley.com

***Counsel to Parkins & Rubio LLP***

Certificate of Service

I hereby certify that on October 12, 2026, a true and correct copy of the foregoing was served by electronic means on all parties registered to receive electronic notice in these cases and by email upon counsel to the Committee and the U.S. Trustee.

*/s/ Charles M. Rubio*
Charles M. Rubio